## MARYLAND AND VIRGINIA ELDERSHIP OF THE CHURCHES OF GOD ET AL. v. CHURCH OF GOD AT SHARPSBURG, INC., ET AL.

No. 414.  Decided January 19, 1970

*Alfred L. Scanlan, James H. Booser,* and *Charles O. Fisher* for appellants.

*Arthur G. Lambert* for appellees.

PER CURIAM.

In resolving a church property dispute between appellants, representing the General Eldership, and appellees, two secessionist congregations, the Maryland Court of Appeals relied upon provisions of state statutory law governing the holding of property by religious corporations,[1] upon language in the deeds conveying the properties in question to the local church corporations, upon the terms of the charters of the corporations, and upon provisions in the constitution of the General Eldership pertinent to the ownership and control of church property.  254 Md. 162, 254 A. 2d 162 (1969).[2]  Appellants argue primarily that the statute, as applied, deprived the General Elder-

---

[1] Md. Ann. Code, Art. 23, §§ 256–270 (1966 Repl. Vol.).

[2] The Maryland court reached the same decision in May 1968. 249 Md. 650, 241 A. 2d 691.  This Court vacated and remanded the case "for further consideration in light of *Presbyterian Church in the United States* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church* . . . ." 393 U. S. 528 (1969).

ship of property in violation of the First Amendment. Since, however, the Maryland court's resolution of the dispute involved no inquiry into religious doctrine, appellees' motion to dismiss is granted, and the appeal is dismissed for want of a substantial federal question.

*It is so ordered.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MARSHALL join, concurring.

I join the *per curiam* but add these comments. We held in *Presbyterian Church in the United States* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U. S. 440, 449 (1969), that "First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern. . . . [T]he [First] Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine." It follows that a State may adopt *any* one of various approaches for settling church property disputes so long as it involves no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith.

Thus the States may adopt the approach of *Watson* v. *Jones,* 13 Wall. 679 (1872), and enforce the property decisions made within a church of congregational polity "by a majority of its members or by such other local organism as it may have instituted for the purpose of ecclesiastical government," *id.,* at 724, and within a

church of hierarchical polity by the highest authority that has ruled on the dispute at issue,[1] unless "express terms" in the "instrument by which the property is held" condition the property's use or control in a specified manner.[2] Under *Watson* civil courts do not inquire whether the relevant church governing body has power under religious law to control the property in question. Such a determination, unlike the identification of the governing body, frequently necessitates the interpretation of ambiguous religious law and usage. To permit civil courts to probe deeply enough into the allocation of power within a church so as to decide where religious law places control over the use of church property would violate the First Amendment in much the same manner as civil determination of religious doctrine.[3] Similarly, where the identity of the governing body or bodies that exercise general authority within a church is a matter of substantial controversy, civil courts are not to make the inquiry into religious law and usage that would be

---

[1] Under the *Watson* definition, *supra*, at 722–723, congregational polity exists when "a religious congregation . . . , by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority." Hierarchical polity, on the other hand, exists when "the religious congregation . . . is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization."

[2] *Id.*, at 722. Except that "express terms" cannot be enforced if enforcement is constitutionally impermissible under *Presbyterian Church*. Any language in *Watson, supra*, at 722–723, that may be read to the contrary must be disapproved. Only express conditions that may be effected without consideration of doctrine are civilly enforceable.

[3] Except that civil tribunals may examine church rulings alleged to be the product of "fraud, collusion, or arbitrariness." *Gonzalez v. Roman Catholic Archbishop*, 280 U. S. 1, 16 (1929).

essential to the resolution of the controversy. In other words, the use of the *Watson* approach is consonant with the prohibitions of the First Amendment only if the appropriate church governing body can be determined without the resolution of doctrinal questions and without extensive inquiry into religious polity.

"[N]eutral principles of law, developed for use in all property disputes," *Presbyterian Church, supra,* at 449, provide another means for resolving litigation over religious property. Under the "formal title" doctrine, civil courts can determine ownership by studying deeds, reverter clauses, and general state corporation laws. Again, however, general principles of property law may not be relied upon if their application requires civil courts to resolve doctrinal issues. For example, provisions in deeds or in a denomination's constitution for the reversion of local church property to the general church, if conditioned upon a finding of departure from doctrine, could not be civilly enforced.[4]

A third possible approach is the passage of special statutes governing church property arrangements in a manner that precludes state interference in doctrine. Such statutes must be carefully drawn to leave control of ecclesiastical polity, as well as doctrine, to church governing bodies.[5] *Kedroff* v. *St. Nicholas Cathedral,* 344 U. S. 94 (1952).

---

[4] Thus a State that normally resolves disputes over religious property by applying general principles of property law would have to use a different method in cases involving such provisions, perhaps that defined in *Watson.* By the same token, States following the *Watson* approach would have to find another ground for decision, perhaps the application of general property law, when identification of the relevant church governing body is impossible without immersion in doctrinal issues or extensive inquiry into church polity.

[5] See, *e. g., Goodson* v. *Northside Bible Church,* 261 F. Supp. 99 (D. C. S. D. Ala. 1966), aff'd, 387 F. 2d 534 (C. A. 5th Cir. 1967).