632 A.2d 226

The AMERICAN UNION OF BAPTISTS INC., et al.

v.

The TRUSTEES OF THE PARTICULAR
PRIMITIVE BAPTIST CHURCH AT
BLACK ROCK, INC., et al.

No. 1974, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Oct. 28, 1993.

Certiorari Granted Jan. 28, 1994.

James L. Otway (Anthenelli & Otway on the brief), Salisbury, for appellants.

C. William Clark (Anthony T. Bartlett and Ruppersberger, Clark & Mister on the brief), Timonium, for appellees.

Argued before WENNER, CATHELL and DAVIS, JJ.

WENNER, Judge.

The genesis of this appeal is an intense rivalry between two religious groups, each claiming to have properly elected the Board of Trustees of the Particular Primitive Baptist Church at Black Rock, Inc. Appellant, the American Union of Baptists, Inc. (AUB), is a religious corporation located in Salisbury, Wicomico County, Maryland. Appellee, the Trustees of the Particular Primitive Baptist Church at Black Rock, Inc., (Black Rock) is a religious corporation located in Butler, Baltimore County, Maryland. AUB has noted an appeal from a judgment of the Circuit Court for Wicomico County, granting Black Rock's Motion for Summary Judgment and denying AUB's motion to vacate the Arbitrators' award.[1] For reasons we shall explain, we shall affirm the judgment of the circuit court.

## *Background*

Black Rock was incorporated in 1891, and filed Articles of Amendment and a Restatement of its Articles of Incorporation with the State Department of Assessments and Taxation (SDAT) in 1978. In 1979, at its first annual meeting after filing Articles of Amendment, Black Rock elected a Board of Trustees. The Board of Trustees then chose Eugene F. Osborne, Sr. (Osborne) as President and George R. Welden (Welden) as Vice–President. The Board of Trustees and its officers were to serve terms of four years. At Black Rock's annual meeting in 1983, Osborne and Welden were reelected to additional terms of four years.

---

1. Arbitration was held after appellant filed a Motion to Compel Arbitration pursuant to § 5–310 of the Corporations and Associations Article. As provided for in § 5–310, each side chose an arbitrator. When the parties could not agree on a third arbitrator, the Circuit Court for Wicomico County was called upon to appoint a third arbitrator.

Osborne called a special meeting of the Board of Trustees on December 8, 1986, to consider his motion to dissolve Black Rock. According to Osborne, Black Rock no longer existed because its minister had died and none of its members were living.[2] After Osborne's motion failed, a group of trustees led by him (the Osborne group), filed a complaint in the Circuit Court for Baltimore County seeking the involuntary dissolution of Black Rock. The complaint was dismissed, an appeal followed, and we affirmed the judgment of the circuit court.[3]

In May of 1987, several members of Black Rock's Board of Trustees, led by George Welden (the Welden group), called a special meeting for June 13, 1987, to elect new officers. Prior to the meeting, Osborne notified the Welden group that any action taken at the special meeting would be invalid because Black Rock's bylaws provided that only the president could call a special meeting. Nevertheless the special meeting was held, with only the Welden group present. As expected, Osborne was removed as president and replaced by Welden.

The Osborne group retaliated, continuing to assert that Black Rock no longer existed because it had no "members," and that Ebenezer Primitive, or Old School Baptist Church of Baltimore City (Ebenezer), now controlled Black Rock.

Ebenezer merged with AUB on July 23, 1987. At its first annual meeting, AUB passed a resolution authorizing it to elect a Board of Trustees for Black Rock. A Board of Trustees for Black Rock was then elected and Osborne was installed as its president. After it had been elected, the Board passed a resolution merging Black Rock into AUB. Articles of Merger were filed with the SDAT.

On July 12, 1988, Black Rock filed a complaint in the Circuit Court for Baltimore City seeking a declaration of Black Rock's properly elected Board of Trustees. Black Rock also sought

---

**2.** Although a congregation still worshiped at Black Rock's church, Osborne did not recognize the congregation as "members."

**3.** *Osborne v. Trustees of the Particular Primitive Baptist Church of Black Rock, Inc.*, No. 748, Sept. Term 1987, (filed February 2, 1988).

an order directing the SDAT to strike the Articles of Merger filed by AUB. In addition, Black Rock asked the circuit court to enjoin AUB from attempting to transfer Black Rock's property and assets. After Black Rock's complaint was transferred to the Circuit Court for Wicomico County, the judicial proceedings were stayed pending arbitration. Following an arbitration award in favor of Black Rock, AUB moved to vacate the award and Black Rock moved for summary judgment. The circuit court denied AUB's motion and granted summary judgment in favor of Black Rock. This appeal followed. On appeal, we are asked:

1. Whether the Arbitration finding that the notice of a Special Meeting of Trustees of Black Rock of June 13, 1987 was valid was completely irrational;

2. Whether the arbitration finding that the presence of five of the ten trustees constituted a quorum and majority was completely irrational.

We note with interest that while AUB has neglected to raise the issue of whether an arbitration award entered under Corporations and Associations Article (CA) § 5–310 [4] is subject to judicial review, Black Rock has raised it. As this is a threshold issue, we shall consider it before addressing the other issues.

Section 5–310 provides a specific method for resolving disputes concerning the fair conduct of elections by religious corporations:

(a) *Selection of Arbitrators.*—If any contest arises over the voting rights or the fair conduct of an election:

(1) Each contending party shall appoint one individual from among the members of a neighboring church of the same religious persuasion or, if there is no such church, from among the members of any other church; and

(2) The two appointed individuals shall select a third, similarly qualified, individual.

---

4. Subtitle 3. Religious Corporations. Part I. In General.

**(b)** *Location of Arbitration.*—The arbitrators shall meet at the place where the contest arose and hear and determine the matter.

**(c)** *Final determination of arbitration.*—The judgment or award of the arbitrators, signed and acknowledged by them, is final.

According to Black Rock, the legislature enacted CA §§ 5–301, *et seq.*, to preserve the separation of church and state. Consequently, Black Rock asserts that the word "final" in § 5–310(c) prohibits judicial review of an arbitration award.

Even though AUB concedes that a court may not determine matters of church polity, AUB nonetheless contends that, under the circumstances of the case *sub judice,* the arbitration award is subject to judicial review because matters of general corporation law, rather than matters of church polity, are here involved. Thus, AUB contends not only that the word "final" in § 5–310(c) does not preclude judicial review, but that § 3–224 of the Courts & Judicial Proceedings Article (CJP) is here applicable.[5]

CA § 5–310 first appeared in Chapter 471, § 161 of the Laws of Maryland, 1868, and was added to a group of laws constituting a subtitle concerning religious corporations, now contained in CA §§ 5–301, *et seq.* This subtitle was first enacted by the General Assembly as Chapter 11 of the Laws of 1802. *Maryland & Va. Eldership of Churches of God v. Church of God at Sharpsburg, Inc.,* 249 Md. 650, 241 A.2d 691 (1968) (*Eldership I* ), *vacated,* 393 U.S. 528, 89 S.Ct. 850, 21 L.Ed.2d 750 (1969), *on remand,* 254 Md. 162, 254 A.2d 162 (1969) (*Eldership II* ), *aff'd,* 396 U.S. 367, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970) (per curiam). In *Eldership I,* 249 Md. at 673, 241 A.2d 691, the Court of Appeals concluded that the legislature intended

to provide for the formation of religious corporations for local congregations which would hold, control and have the

---

**5.** Section 3–224 is part of the Uniform Arbitration Act, § 3–201, *et seq.*, of the Courts & Judicial Proceedings Article.

power to dispose of *the property* of the religious corporation. The Act of 1802 and its successor acts in no way sought to establish any ecclesiastical policy. This was left to the corporations themselves....

■ It is evident from the Court's rationale in *Eldership I* that CA § 5–310 was enacted so that it would be unnecessary for courts to resolve issues of church polity that inevitably arise in disputed church elections. Thus, it follows that the word "final" in CA § 5–310(c) has a different meaning than it has in a dispute not involving issues of church polity. As we see it, when using the word "final" in CA § 5–310(c), the legislature intended that such an award not be subject to judicial review.

As we said earlier, AUB asserts that inasmuch as the dispute in the instant case involves only general corporation law, judicial review is permitted. AUB contends that while courts may not resolve disputes concerning matters of religious polity, by applying "neutral principles of law," courts may resolve disputes concerning church property. *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 449, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969); *Eldership II,* 254 Md. at 165, 254 A.2d 162.

■ In the case *sub judice,* control of Black Rock's property depends upon determining Black Rock's properly elected Board of Trustees. In making that determination, it was necessary for the arbitrators to consider not only the events that preceded arbitration, but the religious polity of Ebenezer and AUB. Even if we were to apply only "neutral principles of law," that would be incidental to determining which trustees constitute Black Rock's properly elected Board of Trustees.[6]

---

6. In a per curiam opinion, affirming *Eldership II,* 396 U.S. 367, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970), Justice Brennan, joined by Justices Douglas and Marshall, authored concurring opinions in an attempt to clarify the role of state courts in resolving disputes concerning church property. Justice Brennan said that courts may get involved in property disputes "only if the appropriate church governing body can be

It is obvious to us that, in order to make this determination, it was necessary for the arbitrators to consider religious polity. Therefore, CA § 5–310(c) prohibits judicial review.

AUB also contends that Rule E–2 mandates judicial review. Rule E–2 provides that:

> After a final award has been made in writing in an arbitration to which the Maryland Uniform Arbitration Act is inapplicable, court proceedings may be had to confirm, vacate, modify, correct, or enter judgment on the award. In any such case, the provisions of the Maryland Uniform Arbitration Act concerning the proceedings shall be applicable.

Inasmuch as the legislature enacted CJP §§ 3–201, *et seq.*, and CA §§ 5–301 *et seq.*, for entirely different purposes, and as we have said, it was necessary for the arbitrators to consider religious polity in determining Black Rock's properly elected Board of Trustees, CA § 5–310(c) prohibits judicial review.

In the alternative, AUB contends that the issues it has here raised are subject to judicial review because it was necessary for the circuit court to appoint a third arbitrator. As AUB points out, CJP § 3–211(c) permits courts to appoint an arbitrator under such circumstances, while CA § 5–310 does not.

While this is true, it is clear from the record before us that arbitration, in this case, was conducted pursuant to CA §§ 5–301, *et seq.* To be sure, it was necessary for the circuit court to appoint the third arbitrator; but this became necessary after it became evident that AUB and Black Rock were hopelessly deadlocked in selecting a third arbitrator. We do not believe that the action of the circuit court brought arbitration under CJP §§ 3–201, *et seq.*

Having concluded that CA §§ 5–301, *et seq.*, are here applicable, we need not consider the issues raised by AUB. Even if we had considered them, we would have affirmed the

---

determined without the resolution of doctrinal questions and without extensive inquiry into religious polity." *Id.* at 370, 90 S.Ct. at 501.

judgment of the circuit court, because the award of the arbitrators was not "completely irrational."

**JUDGMENT AFFIRMED.**