**David PIERCE, Individually and as Next Friend of Melanie Pierce, Jason Pierce, and Nathaniel Pierce, and Mary Pierce, Individually, Appellants,**

v.

**IOWA–MISSOURI CONFERENCE OF SEVENTH–DAY ADVENTISTS, Appellee.**

**No. 94–623.**

Supreme Court of Iowa.

July 19, 1995.

Robert K. DuPuy of LaMarca & Landry, P.C., West Des Moines, for appellants.

James H. Kizziar, Jr., and John A. Ferguson, Jr., of Matthews & Branscomb, P.C., San Antonio, TX, and Brian L. Campbell of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO, and NEUMAN, JJ.

PER CURIAM.

I. *Introduction.*

This case concerns the termination of David Pierce's employment as a ministerial intern of the Iowa–Missouri Conference of Seventh–Day Adventists. Pierce, his wife and his children brought suit against the Church on several theories, including the breach of a unilateral contract of employment. The district court granted the Church's motion for summary judgment. It determined the free exercise clause of the

First Amendment, made applicable to the states through the Fourteenth Amendment, precluded it from addressing any issues related to the Church's policies, procedures or actions in terminating Pierce.

Pierce appeals, relying primarily upon the claim that there exists a secular aspect to his termination which can be reviewed by the courts. He claims that the Church breached an established employment procedure, entitling him to, among other things, counseling once it was determined he was not being effective. We affirm.

## II. *Background Facts and Proceedings.*

The Seventh–Day Adventists Church is a worldwide ecclesiastical corporation organized into a hierarchical structure. The Iowa–Missouri Conference is part of the Mid–American Union Conference, which in turn is part of the North American Division of the General Conference. The General Conference is the highest level of the hierarchy.

The "Working Policy of the North American Division of the General Conference" provides the policies and guidelines for the churches it oversees. Pursuant to the Working Policy, each local conference is to elect an executive committee. The executive committee has authority over all of the churches within the local conference. The by-laws of the Iowa–Missouri Conference enable executive committees to hire ministers.

On February 26, 1985, the executive committee of the Iowa–Missouri Conference voted to hire Pierce as a ministerial intern upon receipt of his bachelor's degree in theology. Pierce was placed in positions as a pastor and associate pastor in several Seventh–Day Adventists churches in the State of Missouri.

On February 21, 1990, the executive committee voted to terminate Pierce's employment. This was done without counseling or giving Pierce an opportunity to correct any perceived deficiencies in his ministry. Pierce unsuccessfully challenged his termination before the executive committee, but took his appeal no further.

Pierce, his wife and his children (Pierce) brought this action against the Iowa–Missouri Conference (Church). He challenged his termination upon the following theories: (1) breach of a unilateral contract of employment; (2) negligence/breach of assumed duty; (3) defamation; (4) intentional infliction of severe emotional distress; (5) equitable fraud/constructive fraud; and (6) economic duress.

The Church filed a motion for summary judgment. It argued the free exercise clause of the First Amendment precluded the court from exercising authority over this dispute. Relying primarily upon *Serbian Eastern Orthodox Diocese for the United States of America & Canada v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976), the district court agreed. The court determined the review of Pierce's termination would involve an inappropriate interpretation of the Church's policies and procedures. The court denied Pierce's Iowa Rule of Civil Procedure 179(b) motion. Pierce appeals.

## III. *Scope of Review.*

Summary judgment is proper when there appears no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). The burden is upon the moving party to show that no issue of material fact exists. *Northrup v. Farmland Indus.,* 372 N.W.2d 193, 195 (Iowa 1985). Moreover, the resisting party is afforded every legitimate inference that can be reasonably deduced from the evidence and a fact question is generated if reasonable minds could differ on how this issue should be resolved. *Henkel v. R & S Bottling Co.,* 323 N.W.2d 185, 187–88 (Iowa 1982).

## IV. *Arguments and Analysis.*

On appeal, Pierce argues primarily that the First Amendment does not prohibit the court's review in this case because religious, doctrinal or theological matters are not implicated. In support of this claim, he relies substantially upon *Drevlow v. Lutheran Church, Missouri Synod,* 991 F.2d 468 (8th Cir.1993) (remand in wrongful termination action for consideration of secular claims related to dissemination of false information in minister's employment file), and *Minker v. Baltimore Annual Conference of United*

*Methodist Church,* 894 F.2d 1354 (D.C.Cir. 1990) (remand for determination of whether minister and church had oral contract for minister's transfer to congregation more suited to his abilities). He argues these cases stand for the proposition that, notwithstanding *Milivojevich,* there are certain aspects of a minister's termination which can be reviewed by secular courts.

Pierce maintains the secular aspect of his claim concerns a unilateral contract created by Working Policy 60 D 10. The pertinent provisions of this policy state:

> The effectiveness of all employees is to be reviewed periodically. Where employees are found to be ineffective, counsel shall be given them and if necessary they should be given other lines of work or be advised to seek employment outside of the denomination.

He admits the issue of whether he was ineffective is purely ecclesiastical and cannot be reviewed by the courts. He argues, however, that the issue of whether his effectiveness was reviewed periodically or whether he was given counseling is separate and distinct from the issue of whether he was ineffective. He maintains the issues related to a lack of review and counseling can be reviewed by the courts.

The Church claims *Drevlow* and *Minker* can be distinguished on their facts. It argues that, unlike the issues found reviewable in these cases, Pierce's dismissal involves an interpretation of the ecclesiastical aspects of the Church's employment policies and procedures. The Church maintains courts that have considered similar issues related to a minister's termination have determined review is barred by the First Amendment. *See Lewis v. Seventh-Day Adventists Lake Region Conference,* 978 F.2d 940 (6th Cir.1992) (First Amendment precludes intervention into decisions of religious judicatory bodies regarding the employment of clergy, even if claims involve misapplication of church's procedures and laws); *Scharon v. St. Luke's Episcopal Presbyterian Hosps.,* 929 F.2d 360 (8th Cir.1991) (personnel decisions of church-affiliated institutions not reviewable by secular courts); *Rayburn v. General Conference of Seventh-day Adventists,* 772 F.2d 1164 (4th Cir.1985), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986) (court refused to review sexual and racial discrimination claims of plaintiff denied pastoral position because she was female); *Kaufmann v. Sheehan,* 707 F.2d 355 (8th Cir.1983) (court refused to review claim of whether minister was denied due process in ecclesiastical tribunal); *McClure v. Salvation Army,* 460 F.2d 553 (5th Cir.), *cert. denied,* 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972) (Civil Rights Act does not apply to employment of ministers).

▪ The First and Fourteenth Amendments to the United States Constitution prohibit courts from interfering with ecclesiastical decision making. *Milivojevich,* 426 U.S. at 698, 96 S.Ct. at 2375, 49 L.Ed.2d at 156. Consistent with this prohibition, Iowa courts have traditionally refrained from interfering in purely ecclesiastical matters. *See Marks v. Estate of Hartgerink,* 528 N.W.2d 539, 544 (Iowa 1995) (citations omitted). However, we have not been confronted with a claim that a church has failed to follow its policies in terminating a minister.

▪ We believe Pierce's effectiveness as a minister was the "essence" of his termination. As the Sixth Circuit Court of Appeals correctly determined, a church's relationship with its ministers implicates "internal church discipline, faith, and organization, all of which are governed by ecclesiastical rule, custom and law." *Hutchison v. Thomas,* 789 F.2d 392, 396 (6th Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986). "The minister is the chief instrument by which the church seeks to fulfill its purpose." *McClure,* 460 F.2d at 558–59. "Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern." *Id.*

### V. Conclusion.

We agree with those courts that have determined the First Amendment requires secular tribunals to refuse to interfere with a church's relationship with its ministers. Accordingly, we decline to review any aspect of the executive committee's decision to terminate Pierce's employment as a ministerial

intern. The district court's order granting the Church's motion for summary judgment is affirmed.

**AFFIRMED.**