Clayton HOLMSTROM, Suzanne Holmstrom, Wayne Diedericks, Stephanie Diedericks, Jim Hughes, Penny Hughes, Karl Krause, Barbara Lammers, Connie Reinhart, Eva Walker, Janet Worden, Evelyn McMullen, Mary Louise Salisbury, Martha Routh, and Maxine Krause, Appellants,

v.

Tim SIR, Kim Sir, Kyle Beran, Jill Edwards, Brady Hunter, Kathy Lichty, Donn Sickles, Katie Sorge, Darwin Sorge, John Wilson and First Congregational Church, Cresco, Iowa, Appellees.

No. 97–1190.

Supreme Court of Iowa.

March 24, 1999.

David J. Dutton and Carolyn A. Rafferty of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellants.

Brendan T. Quann and Stephen C. Krumpe of O'Connor & Thomas, P.C., Dubuque, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and CADY, JJ.

HARRIS, Justice.

An attorney who files a motion is in peril of being sustained. Much, perhaps even all, of this church dispute might well be subject to dismissal on summary judgment. Unfortunately for these defendants however, their attempted motion for summary judgment was never reached because the court sustained their motion to dismiss. We cannot affirm dismissal on the pleadings, and hence must reverse and remand.

■■■ We know more facts than would appear from the face of the petition because there was a hearing on plaintiffs' application for an injunction. But our review must be based only on the facts and circumstances contained in the petition. *Tate v. Derifield,* 510 N.W.2d 885, 887 (Iowa 1994). We do view the allegations in the petition in their most favorable light, resolving all doubts in the plaintiffs' favor. *Magers–Fionof v. State,* 555 N.W.2d 672, 674 (Iowa 1996). We sustain a motion to dismiss only if the petition on its face shows no right of recovery under any stated facts. *State ex rel. Miller v. Philip Morris, Inc.,* 577 N.W.2d 401, 403 (Iowa 1998); *Tate,* 510 N.W.2d at 887.

The petition alleges that all the plaintiffs and defendants are residents of Howard County and members of the First Congregational Church, a nonprofit corporation organized under Iowa Code chapter 504A (1997). The affairs of the church are governed by its by-laws. The plaintiffs allege the defendants, particularly the minister defendant Tim Sir, have violated the by-laws in the following ways:

a. Placed plaintiffs and other members on probation as punishment for unspecified misdeeds when no such procedure or status exists;

b. Terminated longtime members of the congregation without reason or cause without authority under the articles and by-laws;

c. Removed duly elected members from boards and committees for asking questions or suggesting ideas;

d. Severed its affiliation with the United Church of Christ in an illegal manner and by improper procedures;

e. Allowed the minister and his wife to take money from the church treasury and funds for their own personal and private use;

f. Appointed members to leadership positions illegally;

g. Refused to honor a proper request for a meeting of the congregation called for the purpose of exploring the relationship of the church and its minister;

h. Cut off the right of appeal to the congregation by refusing to post minutes of board meetings over a period of years;

i. Punished members who asked questions of the minister by terminating them from membership in the church and ousting them from positions of leadership;

j. Punished members of the church who merely nominated other members to serve on boards or committees in accordance with the articles and by-laws;

k. Leased church property to private individuals in violation of the articles and by-laws;

l. Disposed of property belonging to the church to private individuals in violation of the articles and by-laws;

m. Eliminated church committees illegally;

n. Held illegal meetings of the congregation;

o. Failed to follow the articles and by-laws in connection with the actions of the nominating committee;

p. Participated in a "palace coup" resulting in defendants obtaining the recently remodeled church building and a trust fund of $300,000 plus or minus, to the exclusion of plaintiffs and others;

q. Violated church spending limits; and

r. Participated in a decision to allow the pastor to engage in "double dipping" of expense money in order to avoid the payment of income tax.

I. We have said the role of civil courts in resolving church property disputes is affected by United States Supreme Court decisions construing the impact of the free exercise and establishment clauses of the first

amendment of the federal constitution. *Fonken v. Community Church of Kamrar,* 339 N.W.2d 810, 812 (Iowa 1983). The starting point was *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871), where the court distinguished three kinds of church property disputes: (1) those in which the title document requires the property to be devoted to use for some specific doctrine; (2) those in which the property is held by a congregation owing no fealty to a higher church government; and (3) those in which the local church is subordinate in a hierarchical scheme of ecclesiastical government. *Fonken,* 339 N.W.2d at 812. The third category requires compulsory deference by the court to decisions of church government. *Id.* This deference principle was later qualified by making it applicable only " '[i]n the absence of fraud, collusion or arbitrariness.' " *Id.* (quoting *Gonzalez v. Roman Catholic Church Archbishop of Manila,* 280. U.S. 1, 16, 50 S.Ct. 5, 7–8, 74 L.Ed. 131, 137 (1929)). The same principle was approved in *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America,* 344 U.S. 94, 116, 73 S.Ct. 143, 154–55, 97 L.Ed. 120, 136–37 (1952). *Fonken,* 339 N.W.2d at 812. We noted that the *Gonzalez* qualification on the *Watson* holding was in turn somewhat curtailed by *Serbian Eastern Orthodox Diocese for the United States v. Milivojevich,* 426 U.S. 696, 712–13, 96 S.Ct. 2372, 2382, 49 L.Ed.2d 151, 164–65 (1976) (precluding inquiry into the arbitrariness of ecclesiastical decisions). *Fonken,* 339 N.W.2d at 813.

■■ Civil courts are precluded by the first amendment from deciding doctrinal issues. *Id.* at 813 (citing *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church,* 393 U.S. 440, 449, 89 S.Ct. 601, 606, 21 L.Ed.2d 658, 665 (1969)). The supreme court has however approved a state court's adjudication of a property dispute through the use of neutral principles of law affecting ownership. *Id. (discussing Maryland & Virginia Eldership of Churches of God v. Church of God at Sharpsburg, Inc.,* 396 U.S. 367, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970)). A state may adopt various approaches for settling church property disputes so long as the approach involves no consideration of doctrine. *Id.* (citing *Jones v. Wolf,* 443 U.S. 595, 602, 99 S.Ct. 3020, 3025, 61 L.Ed.2d 775, 784 (1979)).[1]

■ Our court has traditionally refrained from interfering in purely ecclesiastical matters. *Pierce v. Iowa–Missouri Conf. of Seventh–Day Adventists,* 534 N.W.2d 425, 427 (Iowa 1995). This includes membership in a church organization or church discipline:

> [O]rdinarily the courts have no jurisdiction over, and no concern with, purely ecclesiastical questions and controversies, including membership in a church organization, but they do have jurisdiction as to civil, contract, and property rights which are involved in or arise from a church controversy.

*Marks v. Estate of Hartgerink,* 528 N.W.2d 539, 544 (Iowa 1995) (quoting *Brown v. Mt. Olive Baptist Church,* 255 Iowa 857, 859, 124 N.W.2d 445, 446 (1963)).

■ II. Under the foregoing authorities it is clear that at least much of the controversy indicated by the pleadings would—if appropriately attacked—be deemed impervious to court intervention. As indicated however, the matter comes to us on an appeal from a trial court ruling dismissing the suit on the

---

1. Examples exist which illustrate the danger of judicial ventures into matters of church doctrine. Long ago we unwisely consented to sort through conflicting claims of two sides in a bitter church controversy in Muscatine County. Fortunately our opinion in the case was unofficial and we are thus spared from overruling it. It graphically illustrates the prudence of courts when they remain aloof from such matters. We said:

   > It will be observed the dispute between the majority and minority is solely in relation to the synodal connection of the congregation. Several learned divines have testified that the Iowa Synod does not conform to the Lutheran faith and doctrine, and does not believe them. Apparently equally learned divines have testified it does. We have read this evidence with much interest, and simply desire to say that conceding it is our province to determine this question, we with some doubt conclude the Iowa Synod has not departed from the Lutheran faith and doctrine. To state our reasons would greatly enlarge this opinion, and no one engaged in this controversy would be convinced thereby.

   *Dressen v. Brameier,* 56 Iowa 756, 760, 9 N.W. 193, 196 (1881).

pleadings. On such a review we cannot reach the merits, or even take advantage of facts gleaned in a hearing.

Defendants insist we should treat our review as we would on reviewing a summary judgment ruling. It is true that defendants made an attempt to structure their submission on an alternative basis. At the hearing on plaintiffs' application for an injunction, the following record was made:

MR. QUANN (defendant's attorney): I want to make a motion to dismiss prior to the introduction of any evidence. If the court would rule against us, I would want that to be converted to a motion for summary judgment after plaintiff has produced whatever evidence.

THE COURT: You're reasserting it then at that point?

MR. QUANN: Yes.

THE COURT: Well, I'm not prepared to rule on a motion to dismiss, frankly. I just had quite a bit of this authority brought to the court's attention today, however, counsel have indicated that you believe you can submit your evidence in about an hour-and-a-half, and that being the case, and the parties having allocated time today to this, what I might do, I'll certainly hear counsels' position on this, but I may take the motion to dismiss under advisement with the understanding that's a motion that has to stand on the face of the pleadings, stand or fall based on the pleadings and not an evidentiary ruling. And then hear the evidence that you want to present on the injunction. And then of course, Mr. Quann, I guess we'll be reasserting it as a summary judgment motion. And get the matter submitted on that today as well. If that's agreeable with counsel, we'll do that.

MR. QUANN: That's agreeable.

MR. DUTTON: That's fine, and I think the proper procedure.

We can assume the foregoing is adequate to qualify as an alternative submission of a defense motion for summary judgment. But there was never a ruling on such a motion; the trial court simply sustained the motion to dismiss. At a minimum it was incumbent on defendants, in order to preserve any alternative motion, to move under Iowa rule of civil procedure 179(b) for an expansion of the trial court ruling that had ignored it. This was not done.

Because of the present posture of the case, it is even inappropriate for us to point out which individual claims should—on their face—be dismissed. In military parlance, a motion to dismiss is akin to carpet bombing, and will not do in situations that call for a preemptive strike. We have already said that a motion to dismiss can be sustained only if the petition shows on its face no right of recovery under any stated facts. We cannot say, looking only to the face of the petition, that no recovery is possible under any allegation.

Our procedure does provide weapons for precision strikes. In recent memory we often saw records where defendants in such a position filed motions to strike one or more counts from multiple claims. In more recent years we have seen the same position more often urged in the form of a motion for partial summary judgment. A blanket motion to dismiss is an "all-or-nothing" weapon that will not suffice.

The case must be reversed and remanded for further proceedings in conformance with this opinion.

**REVERSED AND REMANDED.**