REL:10/24/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

OCTOBER TERM, 2014-2015

————————————

1130539

————————————

**Burns Church, Inc., and Stephen Etheridge**

**v.**

**Alabama District Council of the Assemblies of God, Inc., and Burns Assembly of God Church**

**Appeal from Geneva Circuit Court**
**(CV-13-90082)**

PER CURIAM.

AFFIRMED. NO OPINION.

See Rule 53(a)(1) and (a)(2)(F), Ala. R. App. P.

Stuart, Bolin, Parker, Murdock, Shaw, Main, Wise, and Bryan, JJ., concur.

1130539

Moore, C.J., dissents.

1130539

MOORE, Chief Justice (dissenting).

I respectfully dissent from the Court's decision to affirm the summary judgment in favor of the Alabama District Council of the Assemblies of God, Inc. ("the District Council"), and Burns Assembly of God Church in their action against Stephen Etheridge and Burns Church, Inc. Though this ecclesiastical dispute incidentally affects property rights, the courts of the State of Alabama lack jurisdiction to intervene in this dispute, which is based upon disparate interpretations of church governing documents and doctrine and conflicting claims of church membership. I believe that the Court should have dismissed this appeal for lack of subject-matter jurisdiction.

## I. The Parties

The District Council, an appellee, is located in Montgomery and is the governing body of all Assemblies of God churches in Alabama. The District Council incorporated in 1942 as a nonprofit religious corporation under Alabama law. The District Council acts under the General Council of the Assemblies of God, which is located in Springfield, Missouri, and is the governing body of all Assemblies of God churches in

the United States ("the General Council"). Burns Assembly of God Church, the other appellee, is located in Geneva County and is an unincorporated religious association that acts under the authority of the District Council and the General Council. Burns Church, Inc., an appellant, is also located in Geneva County. It was incorporated in 2006 as a nonprofit religious corporation under Alabama law. Stephen Etheridge, the other appellant, is the pastor of Burns Church, Inc.

## II. Facts and Procedural History

Burns Assembly of God Church has maintained a house of worship in Geneva County for close to 100 years. For many years, Burns Assembly of God Church has been affiliated with both the District Council and the General Council. In October 2002, the members of Burns Assembly of God Church called Etheridge to be their pastor. In that capacity, Etheridge also served as chairman of the board of directors of the church.

At some point, Etheridge and the directors voted to excommunicate a number of church members whom Etheridge and the directors believed to be contentious and disruptive, who were not tithing as required by the standards for church membership in the bylaws of Burns Assembly of God Church, or

4

1130539

who were no longer actively attending worship services, which is a cause for discipline under the bylaws. The course of action chosen by Etheridge and the directors caused disharmony and contention between, on the one side, Etheridge, the directors, and the remaining members (hereinafter referred to collectively as "the Etheridge faction") and, on the other side, the excommunicated members ("the excommunicated faction"). The excommunicated faction did not appeal the decision on excommunication, as allowed by the bylaws. However, the excommunicated faction did request a hearing with the District Council, whose leaders met with approximately 40 people who expressed their concerns about Etheridge's leadership.[1]

The excommunicated faction continued to assemble and to meet for weekly worship at another location, also under the name Burns Assembly of God Church. The excommunicated faction

---

[1]In 2005, Joe Cotton, one of the excommunicated members and a former director, sued Etheridge and Burns Assembly of God Church, asking the trial court for a judgment declaring that his excommunication from membership in the church was improper. Etheridge and Burns Assembly of God Church moved to dismiss Cotton's action on the ground that matters of church membership are not to be decided by civil courts. On January 16, 2008, the trial court entered a summary judgment against Cotton.

1130539

associated itself with the District Council, which instructed Etheridge and the directors to seek to restore the excommunicated faction to fellowship pursuant to the General Council's bylaws and the bylaws of Burns Assembly of God Church. The District Council attempted, without success, to mediate the dispute between the Etheridge faction and the excommunicated faction.

The District Council recognized the excommunicated faction as being the only true members of Burns Assembly of God Church. The excommunicated faction operated under the District Council's authority, adhered to Assemblies of God doctrines, and retained the District Council's suggested constitution and bylaws. The excommunicated faction appointed a board of trustees and officers and, in time, chose a pastor. The Etheridge faction incorporated as a nonprofit corporation and took the corporate name of Burns Assembly of God, Inc.

Etheridge served as president of Burns Assembly of God, Inc. He was also serving as pastor of the church operating as Burns Assembly of God, Inc., when the District Council announced its decision to remove him as pastor, to revoke his ministerial credentials, to dissolve the board of trustees of

6

Burns Assembly of God, Inc., and to place Burns Assembly of God, Inc., under the supervision of the District Council. Etheridge challenged his dismissal under a provision of the bylaws of the General Council, and the District Council subsequently rescinded its actions.

After further attempts at reconciliation failed, the Dothan Sectional Committee of the District Council sent Etheridge and Burns Assembly of God, Inc., a letter in which it recommended that the church "come under the supervision of the Dothan Sectional Committee." Otherwise, the letter warned, the Committee would "recommend to the District Presbytery the withdrawal of endorsement of the pastor's credentials, and of the church's affiliation with the Assemblies of God."

Several days later, the District Council voted to revoke Etheridge's ministerial license on the grounds of a "general inefficiency in ministry, a record of assembly breaking instead of making, a contentious, non-cooperative spirit, and arbitrary rejection of district counsel." The District Council forwarded its decision on Etheridge's dismissal to the General Council's credentials committee for approval and notified Etheridge of its decision regarding his dismissal.

7

1130539

While Etheridge's dismissal was pending before the General Council, the members of Burns Assembly of God, Inc., voted unanimously to amend the portions of their church constitution governing affiliation with the District Council and the General Council and the disposition of property upon disaffiliation from the Assemblies of God. A representative of the District Council testified that Burns Assembly of God, Inc., had the authority to adopt those amendments and that the District Council accepted the amendments.[2]

The following month, the General Council concurred with the District Council's decision and revoked Etheridge's ministerial license. Burns Assembly of God, Inc., then held a special business meeting in which Burns Assembly of God, Inc., severed its affiliation with the Assemblies of God. Etheridge served as chairman of this business meeting, contrary to the District Council's constitution and minutes.[3] District Council representatives were not present at this business meeting, although the General Council's constitution required their

---

[2]There is no indication in the record that the General Council accepted those amendments.

[3]"No minister dismissed by the Assemblies of God may be allowed to pastor or have ministry in an Assemblies of God church." District Council Minutes § 3(b).

8

attendance.[4] The District Council was notified of the disaffiliation, and the corporate name of the church was changed to Burns Church, Inc.

Etheridge did not appeal the General Council's revocation of his ministerial license, as allowed by the General Council's constitution. However, Etheridge continued to serve as a pastor, and Burns Church, Inc., continued to use the property on which the original Burns Assembly of God Church had operated.

The District Council and the excommunicated faction sued Etheridge, seeking a judgment declaring that the Burns Assembly of God Church formed by the excommunicated faction is a valid congregation under the laws of Alabama and declaring it to be the rightful owner of the church property. On April 12, 2012, the trial court issued an order, stating:

> "Burns Church, Inc., [and] its trustees are indispensable and necessary parties to this action. Either Burns Church, Inc.[,] or the Burns Assembly

_____

[4]"In the event the termination of affiliation with the General Council of the Assemblies of God is under consideration by an affiliated assembly, the pastor or board shall invite the district officers to participate in a specially-called business meeting for the expressed purpose of giving the district officers the opportunity to present the case for continued General Council affiliation." Art. VI, § 3(D), General Council Const.

of God, Inc.[,] has title to the property in question, right of possession of the property in question[,] and [the] right to manage the affairs of the church and hire or fire pastor and staff.[5]

"....

"THEREFORE, IT IS ORDERED AND ADJUDGED AS FOLLOWS:

"1. That the matter for Declaratory Judgment is dismissed.

"2. That [the] parties are entitled to a jury trial on disputed issue [sic] of fact.

"3. If there are no issues as to any material fact, ... Summary Judgment may lie."

(Capitalization in original.) Burns Church, Inc., was later added as a defendant. The District Council and the excommunicated faction filed an amended complaint asserting, among other claims, claims of trespass and conversion and seeking an eviction.

The trial court set the case for a jury trial to begin on May 13, 2013. After a pretrial conference, the trial court issued an order stating that "[t]he parties agreed that the

---

[5]The trial court's summary-judgment order of November 12, 2013, clarifies that the April 12 order "referred to 'Burns Assembly of God, Inc.,' which should have been 'Burns Assembly of God,' the plaintiff." The trial court indicated that its April 12 order did not determine "who owned the property, but that either the Plaintiff or the Defendant owned the property[,] which would be determined at trial or summary judgment."

most critical issue at this time is a legal issue concerning ownership of the property that would be best decided by the Court" and that "all agreed that the jury trial scheduled for May 13, 2013 should be continued."

The District Council and the excommunicated faction then filed a separate quiet-title action against Etheridge and Burns Church, Inc., and moved for a summary judgment in that action. The trial court consolidated the declaratory-judgment action and the quiet-title action into an action identified by a single case number. Burns Church, Inc., and Etheridge opposed the plaintiffs' motion for a summary judgment, and the trial court held a hearing on the motion to determine the rightful owner of the church property.

Burns Church, Inc., and Etheridge argued that the trial court's April 12, 2012, order was a final judgment that determined that Burns Church, Inc., was the true owner of the property. Burns Church, Inc., and Etheridge also argued that Burns Church, Inc., owned the property on the ground that Burns Church, Inc., is the proper successor to Burns Assembly of God, Inc. The District Council and the excommunicated

1130539

faction argued that as a result of prior conveyances, the District Council held title to the church property.

On November 12, 2013, the trial court entered a summary judgment in favor of the District Council and Burns Assembly of God Church. Burns Church, Inc., and Etheridge filed a postjudgment motion to alter, amend, or vacate the judgment, which the trial court denied after a hearing. This appeal followed.

### III. Discussion

#### A. Jurisdictional Separation of Church and State

Before considering the merits of this appeal, this Court should have determined whether it had subject-matter jurisdiction over this ecclesiastical dispute. This Court has recognized that it is our judicial duty "to consider lack of subject matter jurisdiction ex mero motu." Ex parte Smith, 438 So. 2d 766, 768 (Ala. 1983). "As is the case with all churches, the courts will not assume jurisdiction, in fact [have] none, to resolve disputes regarding their spiritual or ecclesiastical affairs." Abyssinia Missionary Baptist Church v. Nixon, 340 So. 2d 746, 748 (Ala. 1976). The courts lack

12

1130539

jurisdiction over ecclesiastical disputes because of the jurisdictional separation of church and state.

> "In accordance with the principles of our institutions and the organic law [Art. I, § 3, Ala. Const. 1901 (religious freedom)], the courts refrain from interfering when the office or functions are purely ecclesiastical or spiritual, disconnected from any fixed emoluments, salary, or other temporalities."

State ex rel. McNeill v. Bibb St. Church, 84 Ala. 23, 33, 4 So. 40, 40 (1888). The jurisdictional separation of the institution of the church from the institution of the state is a fundamental part of the English common law; it predates Magna Carta and remains in force in Alabama.[6] See § 1-3-1, Ala. Code 1975 ("The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the Legislature.").

---

[6]See Yates v. El Bethel Primitive Baptist Church, 847 So. 2d 331, 352 (Ala. 2002) (Moore, C.J., dissenting) ("[T]he principle of the institutional separation of church and state became firmly established in the common-law jurisprudence of England and thereafter, as a result, in the jurisprudence of America."(surveying history of Magna Carta)).

13

1130539

Under § 1-3-1, the jurisdictional separation of church and state is also "an institution" of Alabama law. The word institution, as used in § 1-3-1, means "[a]n elementary rule, principle, or practice." Black's Law Dictionary 918 (10th ed. 2014). Noah Webster defined "institution" as an "[e]stablishment; that which is appointed, prescribed, or founded by authority and intended to be permanent.... We apply the word institution to laws, rites, and ceremonies, which are enjoined by authority as permanent rules of conduct or of government." Noah Webster, American Dictionary of the English Language "Institution" (1828).

Thus, while the jurisdictional separation of church and state is part of our common law, it is also an "institution," i.e., an established, elementary, and permanent rule of law. The Court should apply this rule of law in this and all ecclesiastical disputes, with the understanding that the jurisdictional separation of church and state binds both church and state to their respective jurisdictions and spheres of authority.

B. Courts Have No Jurisdiction Over This Ecclesiastical Dispute

14

The question presented is which faction of members of the original Burns Assembly of God Church has the right to control the use and disposition of the property -- the Etheridge faction or the excommunicated faction. In this intra-church ecclesiastical dispute, the Court must look to the decisions made within the structure of church government.

> "Where factional divisions occur in an ecclesiastical body, the rule of the civil courts is that 'the title to church property ... is in that part of [the ecclesiastical body] which is acting in harmony with its own law, and the ecclesiastical laws, and usages, customs, and principles which are accepted among them before the dispute began, are the standards for determining which party is right.'"

Gewin v. Mount Pilgrim Baptist Church, 166 Ala. 345, 349, 51 So. 947, 948 (1909) (quoting Reorganized Church of Jesus Christ of Latter-Day Saints v. Church of Christ, 60 F. 937, 953 (1894)) (emphasis added).

The Assemblies of God is a hierarchical church with a presbyterian form of government, with "authority in an ascending order of bodies, each of which is composed by representatives of the laity and the clergy." Calvin Massey, Church Schisms, Church Property, and Civil Authority, 84 St. John's L. Rev. 23, 26 n.5 (2010). The Assemblies of God's form

1130539

of church government blends elements of congregational autonomy with a cooperative system of oversight and accountability provided by ascending levels of church councils. See Atkins v. Walker, 284 N.C. 306, 314, 200 S.E.2d 641, 646 (1973) ("A denomination may be, in its government, congregational in part and connectional in part."); Western Conference of Original Free Will Baptists of N.C. v. Creech, 256 N.C. 128, 140, 123 S.E.2d 619, 627 (1962) ("A church may be congregational in some respects and connectional in others."); 66 Am. Jur. 2d Religious Societies § 2 (2014) (same).

The Assemblies of God has the unquestioned right of ecclesiastical government of all the members, local assemblies, and officers within its fellowship.

> "'The right to organize voluntary associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. ... It is of the essence of these religious unions, and of their right to establish tribunals for the decisions of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeal as the organism itself provides for.'"

16

1130539

Hundley v. Collins, 131 Ala. 234, 245, 32 So. 575, 579 (1902) (quoting Watson v. Jones, 80 U.S. (13 Wall.) 679, 729 (1871)). The Court has stated that "[t]he courts will not interfere with mere factional differences arising in ecclesiastical bodies, or in disparate interpretations of doctrine. Such matters are left for settlement to the societies." Davis v. Ross, 255 Ala. 668, 671, 53 So. 2d 544, 546 (1951).

> "[T]he civil courts will not interfere in case of a division in a religious society unless property rights are affected, nor even then if the basis of the schism is due merely to a disparate interpretation of doctrine. Such matters must be settled by the society itself."

Mount Olive Primitive Baptist Church v. Patrick, 252 Ala. 672, 674, 42 So. 2d 617, 618 (1949) (emphasis added). The basis of the present dispute is a disparate interpretation of church doctrine, constitutions, and bylaws. In such cases, the United States Supreme Court has explained:

> "There are occasions when civil courts must draw lines between the responsibilities of church and state for the disposition or use of property. Even in those cases when the property right follows as an incident from decisions of the church custom or law on ecclesiastical issues, the church rule controls."

17

_Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. America_, 344 U.S. 94, 120-21 (1952) (footnote omitted; emphasis added).

The District Council classifies mature local churches within the Assemblies of God as "[s]overeign [a]ssemblies" with "their full share of responsibility for the maintenance of Scriptural order." Art. XI, § 2(b), District Council Const. The District Council also recommends that local church boards "be authorized ... to remove from the list of active [church] members all names of those ... who may have fallen into sin and whose lives may have become inconsistent with the standards and teachings of the assembly." Art. I, § 6, Suggested Constitution and By-Laws for Local Assemblies. At the same time, such assemblies are "organized under the supervision of the district officiary and shall be amenable to the district in all matters which affect the peace and harmony of the fellowship." _Id._ (emphasis added). Burns Assembly of God Church was required to "meet the standards approved by the General Council and the District Council in regard to membership, doctrine, order, methods, conduct, and all other

<u>matters affecting the harmony of the fellowship as a whole</u>." Art XI, § 1, District Council Const. (emphasis added).

Accordingly, a ruling by this Court or the trial court for either the Etheridge faction or the excommunicated faction constitutes a usurpation of the District Council's and the General Council's ecclesiastical jurisdiction over Burns Assembly of God Church. If, on the one hand, this Court affirms the judgment of the trial court and rules for the District Council and the excommunicated faction (as the Court has done), this Court must necessarily conclude that the District Council has the authority under its ecclesiastical constitution to intervene in the local church dispute on behalf of the excommunicated faction, thus effectively controlling the church property. The United States Supreme Court has explained:

> "'[C]ivil courts do not inquire whether the relevant (hierarchical) church governing body has power under religious law (to decide such disputes).... Such a determination ... frequently necessitates the interpretation of ambiguous religious law and usage. To permit civil courts to probe deeply enough into the allocation of power within a hierarchical church so as to decide ... religious law (governing church polity) ... would violate the First Amendment in much the same manner as civil determination of religious doctrine.'"

19

1130539

Serbian E. Orthodox Diocese for United States of America & Canada v. Milivojevich, 426 U.S. 696, 708-09 (1976) (quoting Maryland & Virginia Eldership of the Churches of God v. Church of God at Sharpsburg, Inc., 396 U.S. 367, 369 (1970) (Brennan, J., concurring)). Likewise, this Court should have declined in this case to explore the allocation of ecclesiastical authority between local Assemblies of God churches and the District Council, as doing so violates the jurisdictional separation of church and state.

If, on the other hand, the Court were to reverse the trial court's judgment, the Court would essentially declare that the members of the Etheridge faction are true church members and that the members of the excommunicated faction are not, even though the District Council recognizes them as such. This would constitute a rejection of the ecclesiastical decision of the District Council, contrary to the jurisdictional separation of church and state. Because Alabama's courts have no jurisdiction "to revise ordinary acts of church discipline or pass upon controverted rights of membership," Gewin, 166 Ala. at 349, 51 So. at 948, this Court

20

cannot question the District Council's decision to intervene in the dispute on behalf of the excommunicated faction.

In addition, Etheridge is both chairman of the board of directors and corporate president of Burns Church, Inc., and thus the principal officer of the alleged property-holding corporation. In early June 2008, the General Council revoked Etheridge's ministerial license with the Assemblies of God. However, Etheridge continued to pastor Burns Assembly of God, Inc., after he had been dismissed from the Assemblies of God. Etheridge presided over the business meeting in which the members of Burns Assembly of God, Inc., voted to sever affiliation with the Assemblies of God. If the Court should conclude that Burns Church, Inc., owns the church property, the Court would thereby countenance the proceedings Etheridge led at Burns Assembly of God, Inc., after he had been dismissed from the Assemblies of God. In effect, the Court would be overruling Etheridge's dismissal from the Assemblies of God, which was affirmed by the General Council, the highest ecclesiastical body in the Assemblies of God. Similar to Milivojevich, supra, the resolution of the dispute between the Etheridge faction and the excommunicated faction affects not

only church property, but also the structure and administration of the Assemblies of God.

> "Resolution of the religious disputes at issue here affects the control of church property in addition to the structure and administration of the American-Canadian Diocese. <u>This is because the Diocesan Bishop controls respondent Monastery of St. Sava and is the principal officer of respondent property-holding corporations</u>. Resolution of the religious dispute over Dionisije's defrockment therefore determines control of the property. Thus, <u>this case essentially involves not a church property dispute, but a religious dispute the resolution of which under our cases is for ecclesiastical and not civil tribunals</u>. Even when rival church factions seek resolution of a church property dispute in the civil courts there is substantial danger that the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs."

<u>Milivojevich</u>, 426 U.S. at 709 (emphasis added); see also <u>Ex parte Central Alabama Conference</u>, 860 So. 2d 865, 867 (Ala. 2003) ("[T]he First Amendment prohibits a court's resolving property disputes on the basis of religious practice or doctrine.").

## IV. Conclusion

The mere fact that this intra-church dispute affects property rights does not give the Court jurisdiction over this action. This Court lacks jurisdiction to adjudicate the rights of the parties as to the church property because this church

1130539

schism is based upon disparate interpretations of church governing documents and doctrine and conflicting claims of church membership. These matters must be settled by the District Council and the General Council, not by the courts. I believe that this Court should have dismissed this appeal for lack of subject-matter jurisdiction. Therefore, I dissent.