# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00103-CV

**HEB Ministries, Inc.; Southern Bible Institute; and Hispanic Bible Institute/Texas Higher Education Coordinating Board and Commissioner Don W. Brown, Appellants**

**v.**

**Texas Higher Education Coordinating Board and Commissioner Don W. Brown/HEB Ministries, Inc., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. 98-09152, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## O P I N I O N

At issue is the constitutionality of two provisions of the Texas Education Code that require all private postsecondary educational institutions operating in Texas to obtain a certificate of authority from the Texas Higher Education Coordinating Board or obtain accreditation from a state-approved agency to (1) grant degrees or their equivalents or (2) name or refer to an educational institution as a "seminary." *See* U.S. Const. amend. I, cl. 1; Tex. Const. art. I, §§ 6, 8, 29; Tex. Educ. Code Ann. §§ 61.304, .313(a)(1) (West 1996 & Supp. 2003). In the underlying proceeding HEB Ministries, Inc.[1] raised facial constitutional challenges regarding these provisions in a declaratory-

---

[1] HEB refers to Hurst, Euless and Bedford, three cities located in northeastern Tarrant County between Fort Worth and Dallas. HEB Ministries is unrelated to the H.E. Butt Grocery Company, which is commonly referred to as "HEB." Additionally, we note that Southern Bible

judgment action against the Coordinating Board. By counterclaim, the Coordinating Board sought

a permanent injunction and enforcement of administrative penalties assessed against HEB Ministries

for violations of the education code. The district court ruled unconstitutional the provision

regulating the use of the term "seminary." We will affirm the portion of the district court's judgment

upholding section 61.304, which regulates the granting of degrees, and reverse the judgment insofar

as it holds unconstitutional the portion of section 61.313 that regulates the use of the term

"seminary."

### Statutory Oversight Plan

In 1975, in response to the emergence and proliferation of "degree mills"—private

postsecondary educational institutions granting degrees that undermined the value and integrity of

degrees granted by legitimate institutions—the Texas Legislature amended the Higher Education

Coordinating Act to provide that the Coordinating Board would oversee private postsecondary

degree-granting institutions. *See* Tex. Educ. Code Ann. §§ 61.301-.319 (West 1996 & Supp. 2003).

The legislature's express purpose in developing and implementing this statutory oversight was:

> [T]o prevent deception of the public resulting from the conferring and use of
> fraudulent or substandard college and university degrees; it is also the purpose of this
> subchapter to regulate the use of academic terminology in naming or otherwise

Institute and Hispanic Bible Institute intervened in the district court as plaintiffs, but did not actively participate in the district court. Together, HEB Ministries, Southern Bible Institute, and Hispanic Bible Institute filed a notice of appeal. We refer solely to HEB Ministries as it was the entity actively involved in the district-court proceedings.

designating educational institutions, the advertising, solicitation or representation by educational institutions or their agents, and the maintenance and preservation of essential academic records. Because degrees and equivalent indicators of educational attainment are used by employers in judging the training of prospective employees, by public and private professional groups in determining qualifications for admission to and continuance of practice, and by the general public in assessing the competence of persons engaged in a wide range of activities necessary to the general welfare, regulation by law of the evidences of college and university educational attainment is in the public interest. To the same end the protection of legitimate institutions and of those holding degrees from them is also in the public interest.

*Id.* § 61.301 (West 1996).

A "private postsecondary educational institution" is statutorily defined as an educational institution incorporated under Texas law, which maintains a place of business, has a representative present or solicits business in Texas, furnishes or offers to furnish courses leading to a degree or providing credits alleged to be applicable to a degree, and is not an institution otherwise statutorily defined. *See id.* § 61.302(2) (West Supp. 2003). A private postsecondary institution is exempt from all aspects of the statutory oversight plan if the institution has obtained accreditation from a state-approved agency. *See id.* § 61.303 (West Supp. 2003); 19 Tex. Admin. Code § 5.211(13) (2003) (Higher Education Coordinating Board, listing state-approved accrediting agencies).

At issue is the portion of the statutory oversight plan that provides that a private postsecondary educational institution may not grant a degree unless the Coordinating Board has awarded the institution a certificate of authority. Tex. Educ. Code Ann. § 61.304 (West 1996). A "degree" is statutorily defined as any title, including "associate, bachelor's, master's, doctor's, and their equivalents, which signifies, purports to, or is generally taken to signify satisfactory completion

3

of the requirements of all or part of a program of study leading to an associate, bachelor's, master's, doctor's degree or its equivalent." *Id.* § 61.302(1) (West Supp. 2003). Also at issue is the portion of the oversight plan that prohibits a private postsecondary educational institution from using "seminary" in the official name of an institution unless the institution has been issued a certificate of authority from the Coordinating Board. *Id.* § 61.313(a)(1) (West Supp. 2003).

To qualify for a certificate of authority, an institution must meet the standards established by the Coordinating Board. *See id.* § 61.306(a) (West 1996). The Coordinating Board, pursuant to its rule-making authority, has established twenty-five standards that "represent generally accepted administrative and academic practices and principles of accredited institutions of higher education in Texas." 19 Tex. Admin. Code § 5.214(a) (2003) (Texas Higher Education Coordinating Board, Standards for Nonexempt Institutions); *see* Tex. Educ. Code Ann. § 61.311 (West 1996). Finally, when pursuing a certificate of authority to grant degrees and offer courses from the Coordinating Board,

> If, after a good-faith effort, an institution cannot achieve accreditation within the period of time prescribed by the board, the institution may appeal for extension of eligibility for certification *because of having been denied accreditation due to policies of the institution based on religious beliefs* or other good and sufficient cause as defined by rule of the board. The board shall consider the application of any accreditation standard that prohibited accreditation of the institution on the basis of religious policies practiced by the institution as a prima facie justification for extending the eligibility for certification if all other standards of the board are satisfied.

Tex. Educ. Code Ann. § 61.308(e) (West Supp. 2003) (emphasis added).

4

**Background**

HEB Ministries, self-described as an orthodox Christian church, operates the Tyndale Theological Seminary and Biblical Institute ("Tyndale"), a private religious postsecondary institution that offers undergraduate and graduate plans of study in theology, apologetics, Christian development, world missions, and theological and biblical research. It also offers courses in church history, biblical studies, biblical languages and biblical counseling.[2] Additionally, Tyndale offers general education courses such as basic English grammar, composition, and ancient world history. Tyndale's campus includes four or five classrooms, administrative offices, a small bookstore, library, and computer department. It has approximately 300 to 350 students, with less than one quarter attending classes on campus.

In September 1991, the Coordinating Board informed Tyndale's president, Mal Couch, that the law required Tyndale to obtain a certificate of authority from the Coordinating Board or accreditation from a state-approved agency to grant degrees or credits applicable to degrees, or to use particular statutorily protected academic terminology. For "doctrinal reasons," Tyndale declined to apply for a certificate of authority or to seek accreditation from any of the five approved agencies focusing on religious institutions. Further, Tyndale asserted that applying for a certificate of authority or seeking accreditation from any of the state-approved agencies would jeopardize its

---

[2] HEB Ministries operates Tyndale, their interests in this proceeding are the same, and we refer to them interchangeably.

5

"ecclesiastical rights." Tyndale is, however, accredited by the Association of Christian Colleges & Theological Schools,[3] which is *not* a state-approved accreditation agency.

In July 1998, the Coordinating Board informed Couch that Tyndale (1) was in violation of education-code section 61.304 because the institution had conferred degrees without obtaining a certificate of authority from the Coordinating Board or obtaining accreditation from a state-approved agency and (2) was in violation of education-code section 61.313(a)(1) for using the term "seminary" in the official name of the institution without obtaining a certificate of authority or accreditation from a state-approved agency.[4] The Coordinating Board determined that Tyndale had improperly conferred:

> six undergraduate certificates (consisting of courses alleged to be applicable to degrees), one associate degree, eight bachelor's degrees, two diplomas of Christian Studies (accepted as a baccalaureate equivalent for admission to your master's programs), eleven master's degrees, and six doctoral degrees for a total of 34 degrees; and Tyndale is using the protected term "seminary" in its name.

---

[3] According to Couch, this association is a collection of seven schools "with like thinking theologically and doctrinally" that "banded together" and formed an accrediting association. At the time of the district-court proceedings, Tyndale had been a member of the association for five years.

[4] Tyndale's 1997-98 course catalogue included undergraduate information stating that it confers "The Prestigious, Undergraduate Diploma of Theological Studies" following a "bachelor equivalent course of studies." Tyndale also offers graduate courses in, among other things, "biblical/ministerial counseling" and confers a "Graduate Diploma in Ministry and Christian Counseling." Additionally, Tyndale offers several "Masters of Arts Level Diplomas," and two "Doctors of Ministries Level Diplomas." Finally, Tyndale offers a seminary level diploma, "Th.D. Diploma in Prophetic Studies."

The Coordinating Board assessed administrative penalties of $5,000 for each of thirty-four violations of granting a degree without authority, and an additional $3,000 for using the protected term, "seminary," all totaling $173,000. *See id.* § 61.316 (West Supp. 2003). The Coordinating Board demanded that Tyndale cease using "seminary" in its name, cease awarding or offering to award degrees or credits toward degrees, inform Tyndale's graduates, students, and potential students that it has no degree-granting authority, and offer full refunds to all graduates and students. Further, the Coordinating Board advised Tyndale that failure to comply with these demands would result in a referral to the Office of the Attorney General for injunctive and further relief. *See id.* § 61.318 (West Supp. 2003).

Rather than pursue administrative remedies related to the assessment of the penalties pursuant to section 61.316(f) of the education code, HEB Ministries commenced this underlying declaratory-judgment proceeding, contending that the two statutory provisions were unconstitutional. *See id.* §§ 61.304, .313(a)(1). The Coordinating Board generally denied HEB Ministries' allegations, counterclaimed for enforcement of the penalties, and requested injunctive relief. *See id.* § 61.318. The Coordinating Board contended that Tyndale was subject to *all* statutes and regulations related to private postsecondary educational institutions. Specifically, the Coordinating Board asked that the district court enter an order that HEB Ministries show cause why the court should not order a temporary injunction prohibiting Tyndale from awarding degrees, including academic titles containing associate, bachelor's, master's, doctor's, and their equivalents; granting or offering credits toward academic degrees; and using the term "seminary" in the name of the institution. The Coordinating Board further requested that a permanent injunction issue to the same effect. The

7

district court granted the Coordinating Board's request for a temporary injunction, stating "during the pendency of this suit that unless a certificate of authority has been obtained" from the Coordinating Board, HEB Ministries "shall not grant or award, or offer to grant or award, any degree or the equivalent of a degree" or "represent that credits earned from or granted by Tyndale Theological Seminary and Biblical Institute are applicable for credit toward a degree to be granted by some other person or institution, except under conditions and in a manner specified and approved by the Board."  No party appealed the district court's order.

HEB Ministries moved for summary judgment on its declaratory-judgment action. The Coordinating Board also moved for summary judgment on its enforcement action and request for a permanent injunction.  The district court granted in part and denied in part HEB Ministries' motion.  The district court ruled that HEB Ministries could continue to use the term "seminary" in the official name of the institution, but was prohibited from conferring degrees until it secured a certificate of authority from the Coordinating Board or obtained accreditation from a recognized agency.  The district court also granted in part and denied in part the Coordinating Board's motion. The court vacated the $3,000 penalty assessed against Tyndale for the use of the term "seminary" in the name of the institution, but upheld the $170,000 penalty against HEB Ministries for improperly conferring degrees without a certificate of authority or accreditation by a state-approved agency.  Finally, the court ordered that the temporary injunction become permanent only as to the portion prohibiting the granting of degrees.

**Discussion**

HEB Ministries contends the district court erred by failing to declare section 61.304 of the Texas Education Code unconstitutional under the Establishment, Free Exercise, or Free Speech Clauses of the United States and Texas Constitutions. *See* U.S. Const. amend. I, cl. 1; Tex. Const. art. I, §§ 6, 8, 29; Tex. Educ. Code Ann. § 61.304. The Coordinating Board contends that the district court erred by declaring regulation of the term "seminary" by section 61.313(a)(1) a violation of the First Amendment to the United States Constitution and article I, sections 6, 8 and 29 of the Texas Constitution. *See* U.S. Const. amend. I, cl. 1; Tex. Const. art. I, §§ 6, 8, 29; Tex. Educ. Code Ann. § 61.313(a)(1).

The material facts of this case are not in dispute. Because the propriety of a summary judgment is a question of law, we review the district court's decision *de novo. Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). Because both sides moved for summary judgment and the district court disposed of all the issues by granting in part and denying in part both motions, we review all of the summary-judgment evidence, determine the issues presented, and render the judgment the trial court should have rendered. *See Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex. 2002); *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

The education-code provisions regulating private postsecondary educational institutions are clear and unambiguous in the requirement that all of these types of institutions—regardless of religious character or affiliation—obtain a certificate of authority from the Coordinating Board or accreditation from a state-approved agency before conferring degrees or

9

naming itself a "seminary." Read literally, these statutes encompass HEB Ministries' institution, Tyndale. *See* Tex. Educ. Code Ann. §§ 61.304, .313(a)(1).

The United States Constitution provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U. S. Const. amend. I, cl.1. These clauses are known respectively as the Establishment Clause and the Free Exercise Clause, and apply to the states by virtue of the Fourteenth Amendment. *See* U.S. Const. amend. XIV; *Everson v. Board of Educ.*, 330 U.S. 1, 15 (1947); *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

We begin with the presumption that acts of the legislature are constitutional. *See General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001). If possible, we construe a statute in a manner that renders it constitutional and gives effect to the legislature's intent. *See Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Comp. Comm'n*, 74 S.W.3d 377, 381 (Tex. 2002) (citing *Quick v. City of Austin*, 7 S.W.3d 109, 115 (Tex. 1998)). We presume that the legislature intended for the law to comply with the United States and Texas Constitutions, to achieve a just and reasonable result, and to advance a public rather than a private interest. *Id.* Nevertheless, the legislature may not authorize an action that is constitutionally prohibited. *Id.* The party alleging that a law is unconstitutional bears the burden of demonstrating that the legislature's actions are prohibited under the United States or Texas Constitution. *Id.*

In construing a statute, the primary objective is "to determine and give effect to the Legislature's intent." *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) (quoting *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000)). We start with the "plain and common meaning of the statute's words." *State ex rel. State Dep't of Highways & Pub. Transp.*

10

*v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2000) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999)); *see also Railroad Comm'n v. Texas & N.O. R.R. Co.*, 42 S.W.2d 1091, 1094 (Tex. Civ. App.—Austin 1931, writ ref'd). If the statutory language is unambiguous, we interpret the statute according to its plain meaning. *Gonzalez*, 82 S.W.3d at 327. However, we will not give an undefined statutory term a meaning that is out of harmony or inconsistent with other provisions in the statute. *See Needham*, 82 S.W.3d at 318.

Important to our analysis are the legislature's stated objectives in developing the statutory oversight plan—to prevent fraud as well as public deception and confusion that occurs when private postsecondary institutions use academic terminology in granting degrees or their equivalents or in naming their institutions, without meeting appropriate standards. *See* Tex. Educ. Code Ann. § 61.301; *South Tex. Coll. of Law v. Texas Higher Educ. Coordinating Bd.*, 40 S.W.3d 130, 139 (Tex. App.—Austin 2000, pet. denied).

## A.  Regulation of granting degrees

We first consider HEB Ministries' contentions that the district court erred in upholding section 61.304 under the Establishment, Free Exercise, and Free Speech Clauses of the United States Constitution. The code provides in relevant part:

§ 61.304 Requisite Authority to Grant Degrees and Offer Courses

A person may not grant or award a degree on behalf of a private postsecondary educational institution unless the institution has been issued a certificate of authority to grant the degree by the board in accordance with the provisions of this subchapter. A person may not represent that credits earned or granted by that person or institution are applicable toward a degree to be granted by some other person or institution except under conditions and in a manner specified and approved by the board.

11

Tex. Educ. Code Ann. § 61.304.

### *Establishment Clause challenges*

HEB Ministries contends that regulating the granting of degrees by requiring a certificate of authority from the Coordinating Board or accreditation by a state-approved agency hinders its religious institution and unnecessarily entangles the government with its religion. The Establishment Clause not only prohibits the establishment of a state church, but also declares "that there should be 'no law *respecting* an establishment of religion.'" *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971) (quoting U.S. Const. amend I, cl. 1) (emphasis by Supreme Court). Therefore, laws that are "a step that could lead to such establishment" violate the First Amendment. *Id.* Also addressed by the Establishment Clause is the proposition that government may not resolve controversies on religious doctrine. *Maryland & Va. Eldership v. Church of God*, 396 U.S. 367, 368 (1970). Government's intervention in religious institutions has the grave consequence of interfering with or overruling internal religious determinations of religious groups and entangling itself with religion, establishing a government position on religion or religious issues. *Id.*

The *Lemon* court incorporated these ideas and established a three-part test to determine whether a statute or other governmental action constitutes a "law respecting the establishment of religion." To survive such a challenge, a statute (1) "must have a secular legislative purpose"; (2) its "principal or primary effect must be one that neither advances nor inhibits religion"; and (3) it "must not foster 'an excessive government entanglement with religion.'" *Lemon*, 403 U.S. at 612-13 (quoting *Walz v. Tax Comm'n*, 397 U.S. 664, 674 (1970)). HEB Ministries contends that

12

section 61.304 violates all three parts of the *Lemon* test, but primarily complains that the statute fosters excessive government entanglement with religion.

The Establishment Clause permits minor, unobtrusive government supervision of religiously oriented schools. *See Roemer v. Board of Pub. Works*, 426 U.S. 736, 762-64 (1976). Neither section 61.304 nor the accompanying regulations mandate "active involvement of [government] in religious activity." *Walz*, 397 U.S. at 668. Section 61.304 does not authorize state regulation of the content of Tyndale's educational programs. Contrary to HEB Ministries' contention, section 61.304 does not require the Board "to enter into areas of core religious freedom and autonomy, interfering with and even overruling . . . internal religious decisions."

In the education code, the legislature has sought unobtrusive supervision of religiously oriented schools.

> If, after a good-faith effort, an institution cannot achieve accreditation within the period of time prescribed by the board, the institution may appeal for an extension of eligibility for certification *because of having been denied accreditation due to policies of the institution based on religious beliefs* or other good and sufficient cause as defined by rule of the board. The board shall consider the application of any accreditation standard that prohibited accreditation of the institution on the basis of religious policies practiced by the institution as a prima facie justification for extending the eligibility for certification if all other standards of the board are satisfied.

Tex. Educ. Code Ann. § 61.308(e) (emphasis added). Under the Coordinating Board's regulatory scheme, in the event

> the board determines that an institution is unable to achieve accreditation by a recognized agency *on the basis of religious policies practiced by the institution*, the

13

board will consider the institution eligible to apply for a certificate of authority, provided that all other standards are met at the level of accreditation and that *such religious institutions shall be eligible to grant degrees of a religious nature only*.

19 Tex. Admin. Code § 5.215(d)(4) (2003) (emphasis added). The code and the regulations promulgated under it, therefore, expressly accommodate postsecondary institutions unable to meet the certification or accreditation requirements due to their religious policies. The statutory oversight plan expressly avoids entanglement with the religious policies of such institutions.

Finally, because Tyndale has declined to complete an application for a certificate of authority, its allegations of excessive entanglement are no more than speculation as to the manner in which the Coordinating Board might apply the code and its complimentary regulations. *See New Jersey State Bd. of Higher Educ. v. Board of Dirs. of Shelton Coll.*, 448 A.2d 988, 998 (N.J. 1982).

The legislative purpose in regulating private postsecondary educational institutions is secular—to prevent public deception and confusion resulting from the conferring of *any* fraudulent or substandard postsecondary degree. The principal or primary effect of section 61.304's requiring a Coordinating Board certificate or accreditation by a recognized agency before granting degrees does not advance any religion, nor does the requirement lead to government entanglement in religion. Finally, regulating the granting of degrees under the statutory scheme does not amount to a step toward establishing an official state religion. We hold that section 61.304 satisfies all three requirements of *Lemon* and does not violate the Establishment Clause of the United States Constitution.

***Free Exercise Clause challenges***

HEB Ministries also contends that section 61.304 violates the Free Exercise Clause of the United States Constitution. HEB Ministries contends that government regulation of granting degrees and the academic terminology of bachelor's, master's, and doctor's, which are "ecclesiastical in origin," offends the Free Exercise Clause.

The Free Exercise Clause prohibits "all 'governmental regulation of religious beliefs as such.'" *See Employment Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 879 (1990). The Free Exercise Clause protects religious activities, including proselytizing, and prohibits governmental intervention in disputes about religious authority or dogma. *Id.* Further, government is prohibited from imposing a regulation that would substantially burden a religious practice that is based on sincerely held beliefs unless the lack of the regulation would significantly hinder a compelling state interest. *See Sherbert v. Verner*, 374 U.S. 398, 403 (1963); *Tilton v. Marshall*, 925 S.W.2d 672, 677-78 (Tex. 1996). Although government cannot regulate religious beliefs, the Free Exercise Clause does not relieve individuals of the obligation to comply with a neutral law of general applicability on the ground that the law proscribes, or requires, conduct that is contrary to the individual's religious practice, so long as the law does not violate other constitutional provisions. *See Smith*, 494 U.S. at 879. Religious freedoms, therefore, are not implicated by neutral laws governing activities that government has the right to regulate, merely because some religious groups may be disproportionately affected. *Id.*; *see Ramos v. State*, 934 S.W.2d 358, 367 (Tex. Crim. App. 1996); *Mauldin v. Texas State Bd. of Plumbing Exam'rs*, 94 S.W.3d 867, 872 (Tex. App.—Austin 2002, no pet.)*; see also Marble Falls Indep. Sch. Dist. v. Shell*, 03-02-00652-CV, 03-02-00693-CV,

15

2003 Tex. App. LEXIS 2845, at \*8 (Tex. App.—Austin April 3, 2003, no pet. h.) (memorandum opinion).

To determine the object of a law and whether it is neutral and of general applicability, we begin with the text, because the minimum requirement of neutrality is that a law not discriminate on its face. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernible from the language or context. *Id.*

HEB Ministries presented summary-judgment evidence detailing the ecclesiastical history and origin of conferring degrees. Although granting degrees and the terms bachelor's, master's, and doctor's have ecclesiastical origins, the issue in determining whether section 61.304 is facially neutral is whether the statute's reference to the granting of degrees "refers to a religious practice without a secular meaning discernable from the language or context." *Id.* Despite ecclesiastical origins, granting degrees is, currently, a secular endeavor without necessarily religious connotations or reference to any religious practice. *Id.*; *see also Webster's Third New Int'l Dictionary* 594 (Philip Babcock Gove ed. 1986) (degree is "title conferred upon students by a college, university, or professional school upon completion of a unified program of study carrying a specified minimum of credits, passing of certain examinations, and often completion of a thesis or other independent research project"); *Black's Law Dictionary* 424 (6th ed. 1990) (degree is "title conferred on graduates of school, college, or university").[5] The legislature's purpose in enacting the statutory oversight plan was to ensure that degree-conferring institutions operating in Texas meet

---

[5] The seventh edition of *Black's Law Dictionary* does not include an academic definition.

16

minimum academic standards—whatever their message—and to protect the public against harms arising from the abuse and misuse of degree-conferring powers—harms that would arise independently of any message that might precede degree conferral. On their face, the statutory and regulatory criteria for obtaining a certificate of authority or obtaining accreditation from a state-approved agency to confer degrees are content neutral, censoring no subject, opinion, or educational philosophy. We hold that section 61.304 is facially neutral.

Facial neutrality, however, is not determinative. The Free Exercise Clause also protects against "governmental hostility which is masked as well as overt." *City of Hialeah*, 508 U.S. at 534 ("Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality."). Unlike the ordinance in *City of Hialeah*, section 61.304 was not enacted to target religious conduct or suppress religious beliefs. Rather, it was established in response to the emergence and proliferation of so-called degree mills that were conferring degrees that undermined the value and integrity of degrees conferred by legitimate institutions of higher education. *See* Tex. Educ. Code Ann. § 61.301 (stated purpose for regulating private postsecondary educational institutions). No evidence exists suggesting that the regulation of private postsecondary institutions and the legislature's enactment of this provision in particular was to target any particular religious institutions or religious practices. Simply put, section 61.304 does not covertly target religious conduct. *See City of Hialeah*, 508 U.S. at 533. Section 61.304 applies to all private postsecondary educational institutions that confer degrees. Religious and secular schools are treated identically. Section 61.304 does not impose any additional burdens on any particular religion or on conduct motivated by religious beliefs.

17

HEB Ministries also contends that section 61.304 results in unequal treatment of religious schools because some religious schools may not seek accreditation from any of the state-approved accrediting agencies "based on theological persuasion and association." There has been no showing however that the requirements of the state-approved accrediting agencies were designed to discriminate against any particular religion or religious belief. Further, we again emphasize that the education code and regulations provide,

> If the board determines that an institution has been unable to achieve accreditation by a recognized agency on the basis of religious policies practiced by the institution, the board will consider the institution eligible to apply for a certificate of authority, provided that all other standards are met at the level of accreditation and that such religious institutions shall be eligible to grant degrees of a religious nature only.

*See* 19 Tex. Admin. Code § 5.215(d)(4). Tyndale has steadfastly refused to participate in any of the alternative processes available under the statutory oversight plan.

Although Tyndale is a religious-based school, many of its attributes are secular. For example, Tyndale offers two-year and four-year undergraduate programs, which result in the conferral of "diploma[s] equivalent to a bachelor's level" as well as graduate programs that result in the conferral of "diploma[s] equivalent to a master's level." The school's focus is the Christian faith, but enrollment is open to any person regardless of religious affiliation or denomination; students wishing to enroll are required to submit an application and go through an interview process. Elective courses from other institutions, up to ninety-five hours with a grade of C or above, will be accepted. Students pay tuition for each course. Tyndale employs a full-time faculty and staff to operate the school and administer to the nonacademic needs of the students. Section 61.304 does

18

not regulate the beliefs, practices, or teachings of HEB Ministries or Tyndale; it only prohibits HEB Ministries and Tyndale from granting degrees or academic credits toward degrees. HEB Ministries and Tyndale may continue to *train* individuals for the ministry as they choose. HEB Ministries' predicament is not the result of government regulation of its religious function of training individuals for ministry; rather, it is Tyndale's role in the secular practice of operating a school that grants degrees, which is not a religious activity.[6]

In the event Tyndale applies for and is denied accreditation, upon a showing to the Coordinating Board that it is unable to attain accreditation on the basis of its religious policies, the Coordinating Board may consider Tyndale eligible for a certificate of authority to grant degrees of a religious nature. *Id*. Additionally, the regulation's reference to minimum course requirements imposes no burden on HEB Ministries' free exercise of religion. Contrary to claims by HEB Ministries, there is no requirement that particular courses be added to Tyndale's curriculum. The regulations require only that at least twenty-five percent of the course hours offered be drawn from social sciences, natural sciences, mathematics, fine arts, and the humanities. 19 Tex. Admin. Code § 5.214(a)(9).

We hold that section 61.304 and the accompanying administrative regulations do not interfere with HEB Ministries' religious beliefs or practices. State interest in regulating the granting of educational degrees constitutionally justifies the burden, if any, that such regulation may impose on HEB Ministries' freedom to hold and practice its religious beliefs. "When followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their

---

[6] The Southern Baptist Institute and the Hispanic Bible Institute do not award degrees.

19

own conduct as a matter of conscience and faith, are not to be superimposed in the statutory schemes which are binding on others in the activity." *United States v. Lee*, 455 U.S. 252, 261 (1982). We hold that section 61.304 does not violate the Free Exercise Clause of the United States Constitution.

### Free Speech Clause challenge

HEB Ministries also contends that the prohibition on using the words "associate, bachelor's, master's, doctor's and their equivalents" violates its right to free speech under the United States Constitution. Here, there is not a complete ban on speech but rather a restriction on speech in an effort to prevent the conferral of fraudulent or substandard degrees. "Commercial speech that is not false, deceptive or misleading can be restricted, but only if the State shows that the restriction directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest." *Ibanez v. Florida Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy*, 512 U.S. 136, 142 (1994). Again, section 61.304's stated purpose is to advance the State's substantial interest in preventing harm from private postsecondary educational institutions conferring fraudulent or substandard degrees. Under the statutory oversight plan, the legislature chose to restrict the use of academic terms only as to those entities representing themselves as private postsecondary educational institutions. We hold that the statutes and regulations are narrowly tailored to further the substantial state interest in preventing fraudulent or substandard postsecondary institutions from the misleading use of academic terminology. We reject HEB Ministries' contention that its right to free speech under the United States Constitution was violated.

**B. Regulation of the use of the term "seminary"**

We also consider the Coordinating Board's contention that the district court erred by declaring section 61.313's regulation of the term "seminary" a violation of the Establishment, Free Exercise, and Free Speech Clauses of the United States Constitution. *See* Tex. Educ. Code Ann. § 61.313(a)(1). HEB Ministries maintains that the district court correctly determined that section 61.313's regulation of the term "seminary" facially violates these portions of the United States Constitution. HEB Ministries contends that section 61.313's regulation of "seminary" violates the Establishment Clause because

> banning the use of the term "seminary" is aimed directly at religion and religious institutions. It violates the "secular purpose" prong [of the *Lemon* test]. The clear purpose of including "seminaries" [in section 61.313(a)(1)] is to exert state control over religious teaching and institutions.

Further, HEB Ministries contends that requiring all seminaries to seek state approval inhibits religion and entangles the government with religion in violation of the third part of the *Lemon* test.[7] HEB Ministries also raises a free-exercise challenge contending that "seminary" is not a neutral term and is not generally applicable, but rather refers solely to the religious practice of educating and training individuals for the ministry. Because it alleges "seminary" is without a secular meaning discernable from the language or context of the code, HEB Ministries contends section 61.313's regulation of the

---

[7] As noted above, the Supreme Court's test announced in *Lemon v. Kurtzman* includes three requirements: (1) the regulation must have a secular purpose; (2) the principal or primary effect of the regulation must neither advance nor inhibit religion; and (3) the regulation must not foster excessive government entanglement. 403 U.S. 602, 612-13 (1971).

21

use of "seminary" is not a facially neutral regulation and is unconstitutional. *See City of Hialeah*, 508

U.S. at 533. Finally, HEB Ministries contends that the regulation is an improper restraint on its right

to free speech.

       The education code provides in relevant part:

§ 61.313 Use of Protected Term in Name of Institution

(a) Unless the institution has been issued a certificate of authority under this subchapter, a person may not:

    (1) use the term "college," "university," "seminary," "school of medicine," "medical school," "health science center," "school of law," "law school," or "law center" in the official name or title of a nonexempt private postsecondary educational institution; or

    (2) describe an institution using a term listed in Subdivision (1) or a term having a similar meaning.

Tex. Educ. Code Ann. § 61.313. Before 1997, state law regulated only the use of the terms "college"

and "university." *See* Act of May 27, 1975, 64th Leg., R.S., ch. 587, § 1, 1975 Tex. Gen. Laws

1867. In 1997, the Texas Legislature amended section 61.313 to expand regulation to other terms,

including seminary. *See* Act eff. Sept. 1, 1997, 75th Leg., R.S., ch. 232, § 7, 1997 Tex. Gen. Laws

1149.

*Establishment Clause challenges*

       HEB Ministries contends that under *Lemon*, the degree of government involvement

necessary to implement the statutory oversight plan and section 61.313 calls for unconstitutionally

excessive government entanglement with religion. HEB Ministries argues that government is

22

excessively entangled with religion because the regulations require state approval of seminary boards, professors, and curriculum before Tyndale may call itself a seminary. *See* 19 Tex. Admin. Code § 5.214.

"Routine regulatory interaction which involves no inquiries into religious doctrine" is not excessive entanglement. *Hernandez*, 490 U.S. at 696. Likewise if the regulation does not require "'detailed monitoring and close administrative contact,' between secular and religious bodies," then the regulation is not an excessive entanglement. *Id.*; *see also Jimmy Swaggart Ministries v. Board of Equalization*, 493 U.S. 378, 394-95 (1990). The statutory oversight plan and regulations related to the naming of a private postsecondary educational institution on their face do not involve excessive government entanglement with religion.

Further, because to date Tyndale has neither applied for a certificate of authority nor sought accreditation by a state-approved agency, it is unclear whether there will be any interference with HEB Ministries' right to continue referring to its institution as a seminary. Included in the statutory oversight plan and the accompanying regulations is a procedure that provides an institution, which has been denied accreditation on the basis of religious policies, an alternative avenue to seek a certificate of authority from the Coordinating Board. *See* 19 Tex. Admin. Code § 5.215(d)(4). By pursuing statutory alternatives, Tyndale *may* obtain accreditation or a certificate of authority that would allow it to refer to itself as a seminary. If it is denied accreditation or authority because of its religious beliefs it may then complain. That issue is not before us and is reserved for another day.[8]

---

[8] Additionally, HEB Ministries may rename its institution and avoid all Coordinating Board oversight.

*Free Exercise Clause challenges*

Contrary to HEB Ministries' contentions, "seminary" is not an exclusively religious term, nor does the term refer solely to the religious practice of training individuals for the ministry. In the early twentieth century, the supreme court recognized a seminary as a "place of education." *Church v. Bullock*, 109 S.W. 115, 117 (Tex. 1908); *see also Maddox v. Adair*, 66 S.W. 811, 813 (Tex. Civ. App. 1901, writ ref'd). The supreme court noted that the modifying terms "theological or religious" gave the term seminary a religious connotation; the "meaning of a place specifically for the preparation of men for the ministry or at least, for the teaching of religious doctrines." *Church*, 109 S.W. at 117.

Currently, "seminary" is defined as a place of higher education such as a college, academy, or other school. *See Black's Law Dictionary* 1365 (7th ed. 1999); *Webster's Third New Int'l Dictionary* 2064.**⁹** Furthermore, the Texas Constitution and other statutory and regulatory provisions—particularly those regarding education—observe a distinction between the terms "seminary" and "theological or religious seminary." *See* Tex. Const. art. I, § 7 ("No money shall be appropriated, or drawn from the Treasury for the benefit of any sect, or religious society, theological or religious seminary."); 19 Tex. Admin. Code § 21.405(a) (2003) (regarding Texas College Work-

**⁹** Tax statutes of other states provide exemptions for educational institutions that are referred to as "seminaries of learning." *See*, *e.g.*, Ga. Code Ann. § 48-5-41 (a)(6), (7) (Michie 2001) ("The following property shall be exempt from all ad valorem property taxes in this state: (6) All buildings erected for and used as a college, incorporated academy, or other seminary of learning; (7) All funds or property held or used as endowment by colleges, nonprofit hospitals, incorporated academies, or other seminaries of learning when the funds or property are not invested in real estate."); Minn. Stat. Ann. § 272.02 (5) (West 2002) ("All property described in this section to the extent limited in this section shall be exempt from taxation. . . . Subd. 5. Education institutions. All academies, colleges, and universities and all seminaries of learning . . . .").

Study Program, "a theological or religious seminary shall not be eligible for approval"); 19 Tex. Admin. Code § 22.21 (2003) ("No funds disbursed through the Tuition Equalization Grants Program shall be used for the benefit of any sect or religious society, theological or religious seminary.").

We recognize that in 1997 when the legislature amended the education code, there were no secular seminaries in Texas. The parties do not identify any current secular seminaries existing in Texas nor are we are aware of any.[10] However, we decline to infer that by adding the academic term "seminary" to section 61.313, the legislature was targeting religious seminaries. Undeniably the term "seminary" has strong religious connotations, particularly when used in conjunction with the adjective "theological." *See Church*, 109 S.W. at 117. "Seminary," however, is not an exclusively religious term nor does it refer solely to the religious practice of training individuals for the ministry. The inclusion of "seminary" as an academic term regulated by section 61.313 does not render the regulation facially unconstitutional. Further, nothing before us indicates that the legislature, by including seminary in section 61.313, was aiming to thwart any particular religion, religious belief, or religious practice. *See City of Hialeah*, 508 U.S. at 534. An institution that seeks to call itself a theological "seminary" is not excused from complying with the education code.

Finally, HEB Ministries has failed to demonstrate that section 61.313 imposes any substantial burden on its free exercise of religion. To date, neither HEB Ministries nor Tyndale has submitted an application for a certificate of authority from the Coordinating Board or sought

---

[10] The Coordinating Board identifies one secular seminary in the country, Buffalo Seminary in Buffalo, New York. This secular institution is, however, a private girls' college preparatory school, not a postsecondary institution.

accreditation from any of the five state-approved agencies that focus on religious institutions. When asked how seeking accreditation from any of these agencies might burden the free exercise of religion or jeopardize its ecclesiastical rights, Couch responded, "I've studied some of their requirements [of the Accrediting Association of Bible Colleges]. We believe that many of them are unreasonable or that they may jeopardize our ecclesiastical rights. . . . I know some of the specific requirements that they have that we feel are intrusive and would also jeopardize doctrinally." We conclude that this explanation falls short of demonstrating that section 61.313 *substantially burdens* HEB Ministries' free exercise of religion. HEB Ministries does not claim that its religious beliefs require that it label Tyndale a "seminary." Importantly, HEB Ministries may continue to teach its religious beliefs without such a name. We conclude that HEB Ministries has failed to show that section 61.313's regulation of the term "seminary" substantially burdens its religious beliefs or practices to such an extent or in such a manner as to infringe upon HEB Ministries' free exercise of religion and render the regulation facially unconstitutional. We hold that state regulation of the term "seminary," as set forth in section 61.313 does not violate the Free Exercise Clause of the United States Constitution.

### *Free Speech Clause challenge*

HEB Ministries contends that 61.313's regulation of the term "seminary" violates its right to free speech because it is content-based and does not survive the strict-scrutiny constitutional test. *See Turner Broad. Sys., Inc. v. Federal Communications Comm'n*, 512 U.S. 622, 641-42 (1994) (statutes impinging on fundamental rights subject to most rigorous constitutional review). Specifically, HEB Ministries argues that because section 61.313's regulation of the term "seminary"

is not content-neutral *and* imposes special obligations or burdens on religiously affiliated institutions, heightened First Amendment review is required. *Id.* The Coordinating Board contends that the regulation is content-neutral and is narrowly tailored to serve a significant governmental interest. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

In reviewing a constitutional challenge related to a free-speech violation, a court must first determine if the challenged statute is content-neutral. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986). Content-neutral regulations are valid provided they are narrowly tailored to serve a substantial governmental interest, and do not unreasonably limit alternative channels for communicating the information. *Id.* A content-neutral regulation generally must be both viewpoint neutral and subject-matter neutral. *See*, *e.g.*, *Hill v. Colorado*, 530 U.S. 703, 722-23 (2000). To be viewpoint neutral, a regulation must not be based on the message's ideology. *See Boos v. Berry*, 485 U.S. 312, 321 (1988) (ordinance impermissibly distinguished between signs allowed and disallowed based on viewpoint expressed). To be subject-matter neutral, a regulation must not be based on the speech's topic. *See Carey v. Brown*, 447 U.S. 455, 471 (1980) (ordinance impermissibly prohibited all picketing in residential neighborhoods unless labor picketing connected to place of employment; though not restrictive as to which view of labor expressed, ordinance prohibited all speech except that related to subject of labor). So long as the content-neutral regulation is "not substantially broader than necessary to achieve the government's interest," the regulation is valid as a restriction on free speech. *Rock Against Racism*, 491 U.S. at 800.

Section 61.313 is not aimed at suppressing any speech—religious or secular—by any party, including HEB Ministries. Neither is it aimed at dictating the religious tenets espoused by

27

HEB Ministries or the content of the courses taught at Tyndale. The regulation is aimed at preventing public deception from potentially misleading use of academic terminology by fraudulent private higher-education institutions. *See* Tex. Educ. Code Ann. § 61.301. Unquestionably, section 61.313 regulates and restricts various academic terms used in naming or otherwise designating a private postsecondary educational institution that might be deceptive or confusing to the public.[11] *See id.* However, a regulation that "serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Rock Against Racism*, 491 U.S. at 791; *City of Renton*, 475 U.S. at 47-48.

We hold that section 61.313's regulation of the term "seminary" is content-neutral and serves a significant governmental interest. Further, section 61.313 is narrowly tailored to further the Coordinating Board's interest in preventing the fraudulent use of academic terms by private postsecondary institutions. Section 61.313 does not violate the Free Speech Clause of the First Amendment.

## C. **Texas constitutional challenges**

HEB Ministries contends that section 61.304's requirement that it obtain a certificate of authority or accreditation by a state-approved agency before conferring degrees and section

---

[11] The legislature has restricted the use of other terms likely to be deceptive or confusing to the public. *See*, *e.g.*, Tex. Rev. Civ. Stat. Ann. art. 3271a, § 1.2(a)(2) (West Supp. 2003) (restricts use of "engineer," "professional engineer," or "licensed engineer"); Tex. Rev. Civ. Stat. Ann. art. 249e, § 3(1), (2) (West Supp. 2003) (restricts use of "interior designer" and "interior design"); Tex. Rev. Civ. Stat. Ann. art. 41a-1, §§ 8(a) (restricts use of "Certified Public Accountant" or "CPA" unless person has received certificate as certified public accountant), 8(c), (e) (restrict terms "public accountant," "certified accountant," and "licensed accountant") (West Supp. 2003).

61.313's regulation of the term "seminary" violates the Texas Constitution's Establishment, Free Exercise, and Free Speech Clauses. *See* Tex. Const. art. I, §§ 6, 8, 29. The Texas Supreme Court has repeatedly rejected invitations to interpret the provisions of the Texas Bill of Rights more broadly than the First Amendment and has cautioned against it. *See*, *e.g.*, *Operation Rescue-Nat'l v. Planned Parenthood of Houston & Southeast Tex., Inc.*, 975 S.W.2d 546, 558-59 (Tex. 1998); *see also Texas Dep't of Transp. v. Barber*, 46 Tex. Sup. Ct. J. 916, 928-29, 2003 Tex. LEXIS 107, at *54-56 (July 3, 2003) (discussing scope of Texas Constitution's protection of noncommercial speech and holding there was no showing that such protection is broader than that afforded by First Amendment). We decline to interpret these protections more broadly than does the United States Constitution.

### Conclusion

By restricting the degree-granting powers of all private postsecondary institutions and restricting the use of certain academic terms in the names of such institutions, the Texas Legislature has assured the Texas public that all such institutions, regardless of the content of their message, have met basic postsecondary educational standards. We affirm the portion of the district court's judgment ruling that Texas Education Code section 61.304, regulating the granting of degrees, is constitutional, and we uphold the related administrative penalties of $170,000 assessed against Tyndale for violating this section. We reverse the portion of the district court's judgment that Texas Education Code section 61.313's regulation of the term "seminary" is unconstitutional, and render judgment that such regulation does not violate any portion of the United States or Texas Constitutions. Accordingly, we reinstate the Coordinating Board's administrative penalty of $3,000

29

assessed against Tyndale for violating section 61.313. We reverse and remand to the district court

with instructions that it order a permanent injunction consistent with this opinion.

_____

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed in Part; Reversed and Rendered in Part;
  Reversed and Remanded in Part

Filed:  July 24, 2003