MAKTAB TARIGHE OVEYSSI SHAH
MAGHSOUDI, INC.; Nader Angha,
Plaintiffs–Appellants,

v.

Ali KIANFAR; Nahid Kianfar; International Association of Sufism,
Inc., Defendants–Appellees.

No. 96–15002.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 16, 1998.

Decided June 17, 1999.

Paul L. Hoffman, Bostwick & Hoffman, Santa Monica, California, for the plaintiffs-appellants.

Curtis E.A. Karnow, Sonnenschein, Nath & Rosenthal, San Francisco, California, for the defendants-appellees.

Before: CHOY, CANBY, and KLEINFELD, Circuit Judges.

CANBY, Circuit Judge:

This case presents the question whether a civil court can decide this dispute over the rights to intellectual property of a religious order without violating the First Amendment. We conclude that it can, and accordingly reverse the district court's dismissal of the complaint.

Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. ("Shah Maghsoudi"), the corporate embodiment of an ancient Sufi Order, and its leader, Nader Angha, appeal the district court's dismissal of their complaint against two former members of Shah Maghsoudi and the competing organization that they established. The two former members, Ali Kianfar and Nahid Kianfar, founded the International Association of Sufism, Inc. ("the Association") after their expulsion from Shah Maghsoudi. Shah Maghsoudi and Angha allege that the Association is trading on Shah Maghsoudi's goodwill by selling Shah Maghsoudi's trademarked publications as the Association's own and by employing a trademark which is a colorable imitation of Shah Maghsoudi's registered trademark. Shah Maghsoudi and Angha assert claims of trademark infringement pursuant to 15 U.S.C. § 1114, false designation of origin pursuant to 15 U.S.C. § 1125(a), and supplemental violations of California state intellectual property law.[1]

The district court concluded that it could not resolve the property dispute without first resolving the fundamental religious dispute between the two organizations regarding succession of the Order's leadership. Because the First Amendment prohibits civil courts from resolving disputes of religious doctrine, *see Presbyterian Church v. Hull Memorial Presbyterian Church,* 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969), the district court dismissed the complaint with prejudice.[2] Shah Maghsoudi and Angha appealed to this court.

## BACKGROUND

Because the district court dismissed the complaint for failure to state a claim upon which relief could be granted, *see* Fed.R.Civ.P. 12(b)(6), we draw our facts from the complaint, treating all of the plaintiffs' factual allegations as true.[3] *Experimental Eng'g Inc. v. United Technologies Corp.,* 614 F.2d 1244, 1245 (9th Cir. 1980).

Both parties practice Sufism, a form of Islam professed for centuries by various orders founded and carried on by ascetic mystics. Shah Maghsoudi is the corporate embodiment of a Sufi Order that traces its origins to the Teacher Oveys Gharani, a contemporary of the Prophet Muhammad. From its founding until 1970, the Order passed its traditions down through a succession of forty-one individual teachers who, according to the religion, are the embodiment of wisdom of the Order. According to the tradition and practice of the Order, the current Teacher inherits certain property rights from the former Teacher including the rights to physical property, teachings, works, and publications.

The plaintiffs allege that Nader Angha was formally appointed successor of the Forty–First Teacher, Angha's now-deceased father, in 1970 and is, therefore, the current legitimate Forty–Second Teacher

---

1. Plaintiffs invoke supplemental jurisdiction over the California state law claim of wrongful use of trade names, in violation of California Business and Professional Code §§ 17200 and 17203.

2. The district court held that "[t]he only way for the Court to determine plaintiffs' property rights and whether defendants have misled the public as to their religious authenticity is to decide who is the official leader of the Order according to Sufi doctrine."

3. We review de novo the district court's order dismissing the complaint pursuant to Fed. R.Civ.P. 12(b)(6). *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295 (9th Cir.1998). Dismissal is improper unless it appears beyond a doubt that the plaintiffs can prove no set of facts that would entitle them to relief. *See Johnson v. Knowles,* 113 F.3d 1114, 1117 (9th Cir.1997).

of the Order. In 1978, Angha moved Shah Maghsoudi to San Rafael, California and incorporated it under California law. Under the corporate by-laws of Shah Maghsoudi, Angha holds office as the "religious leader" of the organization.

Angha also owns in his own name, doing business as Shah Maghsoudi, several trademark registrations including: the name of the organization, "Maktab Tarighat Oveyssi Shahmaghsoudi (School of Islamic Sufism)" (Reg. Nos. 1,652,335 and 1,655,795); a service mark of a symbolic representation of the open heart (Reg. No. 1,440,550); and a service mark of an arabesque design containing the name "Maktab Tarighe Oveyssi Shah Maghsoudi" in Persian calligraphy (Reg. No. 1,441,153). Shah Maghsoudi maintains that these names and symbols are used to authenticate its publications and other teaching materials distributed to its followers and the public.

Defendants Ali and Nahid Kianfar were members of Shah Maghsoudi until 1983 when Angha expelled them for alleged wrongdoing. Prior to their expulsion, the Kianfars publicly recognized Angha as the legitimate Forty–Second Teacher of the Order. The defendants now contend that Angha is not the true Teacher, but rather that the old Order ended with the death of the Forty–First Teacher and that the Forty–First Teacher founded a new Order of which the Kianfars are successors to the leadership. Following their expulsion from Shah Maghsoudi, the Kianfars established the Association and began representing that it was the legitimate successor to the Forty–First Teacher's old Order.

In 1995, Shah Maghsoudi and Angha brought this action in district court against the Kianfars and the Association. The First Amended Complaint alleged that the defendants attempted to trade on the plaintiffs' goodwill by selling Shah Maghsoudi's trademarked publications as their own, and by employing a trademark which is a colorable imitation of Shah Maghsoudi's trademark. Shah Maghsoudi and Angha requested the following relief: (1) a declaratory judgment that they hold exclusive rights to the name "Maktab Tarighe Oveyssi Shahmaghsoudi" and to any variation or abbreviations of this name; (2) injunctive relief prohibiting the defendants from using Shah Maghsoudi's name; (3) injunctive relief prohibiting the defendants from directly or indirectly employing Shah Maghsoudi's trademarks, designations, service marks or any colorable imitations or simulations of these marks; and (4) injunctive relief prohibiting the defendants from representing that they have any right of successorship to the Teacher of the Order, that they are Teachers in the Order, or that the Order ceased to exist upon the death of the Forty–First Teacher.[4]

The defendants filed a motion to dismiss on the ground that the First Amendment barred judicial resolution of disputes of religious doctrine, and that resolution of this dispute would require the district court to determine whether Angha or the Kianfars are the true and legitimate leaders of the Order. The district court agreed and dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6) before any discovery was conducted. It also ruled that any further amendment of the complaint would be futile and denied leave to amend, entering judgment in favor of the defendants.

## DISCUSSION

■ The district court was understandably wary of deciding who is the legitimate Forty–Second Teacher or other leader of the Order. The First Amendment not only precludes a civil court from determining for itself who is entitled to hold reli-

---

4. The plaintiffs also requested money damages for any actual losses incurred by Shah Maghsoudi, and an accounting for any profits made by the defendants as a result of the acts outlined in the complaint. Pursuant to 15 U.S.C. § 1117, Shah Maghsoudi and Angha seek trebled damages for any of their actual losses or any of the defendants' profits attributable to trademark infringement. Finally, the plaintiffs request punitive damages and attorneys' fees.

gious office, but also precludes it from determining whether the religious organization followed its own ecclesiastical rules in anointing one of its leaders. *See Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 710–711, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). The fact that such religious issues arise in the course of a civil property dispute does not authorize the court to resolve them.

"First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern...."

*Presbyterian Church,* 393 U.S. at 449, 89 S.Ct. 601.

In avoiding the religious thicket, however, we must be careful not to deprive religious organizations of all recourse to the protections of civil law that are available to all others. Such a deprivation would raise its own serious problems under the Free Exercise Clause. *Cf. Everson v. Board of Education,* 330 U.S. 1, 16, 67 S.Ct. 504, 91 L.Ed. 711 (1947). It would also leave religious organizations at the mercy of anyone who appropriated their property with an assertion of religious right to it.

■ The Supreme Court accordingly has recognized that courts may play a role in resolving religious property disputes. "[N]ot every civil court decision as to property claimed by a religious organizations jeopardizes values protected by the First Amendment." *Presbyterian Church,* 393 U.S. at 449, 89 S.Ct. 601. The First Amendment requires only that courts "decide church property disputes without resolving underlying controversies over religious doctrine." *Presbyterian Church,* 393 U.S. at 448, 89 S.Ct. 601. The Supreme Court has recognized two methods of accomplishing this goal, and the plaintiffs have sought to invoke both of them.

1. *Deference to Hierarchical Decision–Making Body*

■ Civil courts may follow *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871), and its progeny, in deferring to the decision-making authorities of hierarchical churches. Under that approach, the court avoids entanglement in religious issues by accepting the decision of the established decision-making body of the religious organization. *See Serbian Eastern Orthodox Diocese,* 426 U.S. at 708–09, 96 S.Ct. 2372. This approach is most easily employed when there is no dispute between the parties concerning the hierarchical nature of the church or the identity of its decision-making body. *See id.* at 715 & n. 9, 96 S.Ct. 2372. When the nature of the religious organization or the identity of its decision-making body is disputed on the basis of religious doctrine, however, the resolution of these threshold questions may require a court to intrude impermissibly into religious doctrinal issues. *See Jones v. Wolf,* 443 U.S. 595, 605, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979); *Maryland and Virginia Eldership of Churches of God v. Church of God at Sharpsburg,* 396 U.S. 367, 368–70, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970).

In the present case, the parties dispute whether the Oveyssi Order is hierarchical, and whether a hierarchical decision was made identifying and investing the Forty–Second Teacher. Unlike the district court, however, we are unable to conclude from the face of the complaint that resolution of these questions would require the court to transgress First Amendment boundaries. The complaint does allege a hierarchical organization and a recognized decision, at one time accepted by the Kianfars, that Angha was the Forty–Second Teacher, who thereby acquired the right to control all property of the Order. It is difficult to conclude before issue is joined that these allegations of fact cannot be established

without improperly enmeshing the court in religious doctrine. On the other hand, the allegations of the complaint reflect enough controversy over these issues to make the danger of unconstitutional entanglement a real one. For that reason, the approach of deference to hierarchical decision-making is not the preferred one for resolving this dispute, when the alternative method endorsed by the Supreme Court may resolve all of the disputed property issues without significant constitutional difficulties.

2. *Decision By Neutral Secular Principles*

■ The Supreme Court has held that, wholly apart from the hierarchical decision-making apparatus of the religious organization, a court may resolve property disputes by applying secular principles of property, trust and corporate law when the instruments upon which those principles operate are at hand. Thus no First Amendment issue arises when a court resolves a church property dispute by relying on state statutes concerning the holding of religious property, the language in the relevant deeds, and the terms of corporate charters of religious organizations. *Maryland and Virginia Eldership*, 396 U.S. 367, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970). The Supreme Court has recited several advantages of this approach:

> The primary advantages of the neutral-principles approach are that it is completely secular in operation, and yet flexible enough to accommodate all forms of religious organization and polity. The method relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges. It thereby promises to free civil courts completely from entanglements in questions of religious doctrine, polity, and practice.

*Jones v. Wolf*, 443 U.S. at 603, 99 S.Ct. 3020. These advantages were deemed substantial enough in *Jones* to permit the state court to decide the property dispute by neutral principles even though the outcome might contravene the decision of the hierarchical church! *See id.* at 604–06, 99 S.Ct. 3020.

■ Here, most of the claims stated in the First Amended Complaint are susceptible to decision by neutral principles. First and foremost, Angha and Shah Maghsoudi seek various forms of relief for trademark infringement and false designation of origin, under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). We have previously applied neutral principles of trademark infringement in disputes between religious organizations. *See Self–Realization Fellowship Church v. Ananda Church of Self–Realization*, 59 F.3d 902 (9th Cir.1995). The trademarks and service marks to which Shah Maghsoudi and Angha claim title and which they contend are infringed were registered to Angha, doing business as Shah Maghsoudi, between 1987 and 1991. This registration constitutes prima facie evidence that Angha owns the marks. *See Sengoku v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.1996). It also provides constructive notice of the claimed ownership of the marks. *See* 15 U.S.C. § 1072; *Park 'N Fly v. Dollar Park and Fly*, 469 U.S. 189, 199–200, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). In determining whether the trademarks have been infringed, the district court can apply the regular factors that courts employ to determine infringement. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979). The defendants can raise neutral defenses, such as prior use of the marks, to the extent that they are applicable.[5] *See Sengoku*, 96 F.3d at 1219. To determine these issues, the district court has no need to decide who is the legitimate Forty–First Teacher of the Order or any other

---

5. Defenses that are not secular create the same constitutional difficulties as claims that are not secular. The court might become impermissibly entangled in religious doctrine, for example, if it entertained a defense to trademark infringement that depended upon a showing that the record trademark owner was not a legitimate religious leader of the authorized user.

matter of religious doctrine. The same may be said for the federal claim of false designation of origin, *see Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534–35 (9th Cir.1989) (rights protected under § 1125(a) are governed by same principles that govern trademark rights), and the state claim of unfair competition, *see Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.1994) ("actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act").

Shah Maghsoudi also states a claim for tortious conversion of books and materials taken from its possession by the Kianfars when they left the organization. It is not apparent from the complaint why this claim, too, is not susceptible to decision by ordinary principles of the law of personal property. The determination of rights within the Shah Maghsoudi corporation presumably may be determined by reference to the corporate charter. *See Maryland and Virginia Eldership*, 396 U.S. at 367–68, 90 S.Ct. 499.

Indeed, the actions of Shah Maghsoudi in registering trademarks and incorporating itself under state law appear to be examples of a tendency that the Supreme Court has encouraged. "States, religious organizations, and individuals must structure relationships involving church property so as not to require the civil courts to resolve ecclesiastical questions." *Presbyterian Church*, 393 U.S. at 449, 89 S.Ct. 601. To prevent a court's application of neutral principles from frustrating the doctrinal goals of a religious organization, the parties can ensure their intended treatment of religious property by writing their requirements into such instruments as "deeds or the corporate charter." *Jones v. Wolf*, 443 U.S. at 606, 99 S.Ct. 3020. Shah Maghsoudi having adopted certain state and federal legal structures, it is incumbent upon the civil court now to apply to those structures the secular law that governs them.

One request for relief in the complaint cannot be decided, at least in large part, by neutral principles. Shah Maghsoudi and Angha ask that the defendants be enjoined "from representing that the Order ceased to exist with the death of the Forty–First Teacher, and that they are teachers or masters of the Order." The district court cannot determine by neutral principles the legitimacy of Angha's succession; that kind of determination could only be made by a recognized decision-making body of the Order itself. *Jones v. Wolf*, 443 U.S. at 609, 99 S.Ct. 3020. For reasons stated in the preceding section of this opinion, the district court may find that it cannot determine whether such a controlling decision has been made by the Order without unduly entangling itself in doctrinal issues.[6]

## CONCLUSION

The district court erred in concluding that none of the claims alleged by Shah Maghsoudi and Angha could be addressed without the determination of religious issues by the court in violation of the First Amendment. Nearly all of the claims are determinable by neutral, secular principles. After all such claims are determined, the court may then decide whether any issues remaining for decision will require impermissible determinations of doctrine by the court, in which case they may be dismissed. The judgment of the district court is reversed and the matter is remanded for further proceedings.

## REVERSED AND REMANDED.

6. To the limited extent that this particular claim for relief may incorporate a request for relief from false designation of origin, it is subsumed in that claim, which we have held to be susceptible to decision by neutral principles.