142 Nev., Advance Opinion 25

IN THE SUPREME COURT OF THE STATE OF NEVADA

JASVINDER SINGH, AN INDIVIDUAL; KULDEEP SINGH GHUMAN, AN INDIVIDUAL; NACHHATER SINGH, AN INDIVIDUAL; DIVINDER CHAWLA, AN INDIVIDUAL; GURMAIL SINGH, AN INDIVIDUAL; JASWINDER SINGH DHAMI, AN INDIVIDUAL; PARMJIT SINGH, AN INDIVIDUAL; AND SARVPREET SINGH BAINS, AN INDIVIDUAL,
Petitioners,
vs.
THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF WASHOE; AND THE HONORABLE KATHLEEN M. DRAKULICH, DISTRICT JUDGE,
Respondents,
and
ARJUN SINGH, AN INDIVIDUAL; KULWANT SINGH JOHAL, AN INDIVIDUAL; DILBAG SINGH, AN INDIVIDUAL; AND TARSEM SINGH, AN INDIVIDUAL,
Real Parties in Interest.

No. 90620



FILED

APR 02 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Original petition for a writ of prohibition or mandamus challenging a district court order denying a motion to dismiss a corporate governance action for lack of subject matter jurisdiction.

*Petition denied.*



26-15018

Patricia Halstead, Reno,
for Petitioners.

Holland & Hart LLP and Matthew B. Hippler, Reno; Fisher & Phillips LLP
and Joshua M. Halen, Los Angeles,
for Real Parties in Interest.

---

BEFORE THE SUPREME COURT, PICKERING, PARRAGUIRRE, and
BELL, JJ.

*OPINION*

By the Court, PARRAGUIRRE, J.:

A religious organization's general members sought relief from a Nevada court after the organization's managers sought to transfer property rights in alleged violation of its bylaws. The managers, relying on fundamental notions of separation of church and state, moved to dismiss the case in full under the ecclesiastical abstention doctrine, which requires civil courts to abstain from resolving matters on the basis of religious doctrine and practice. *See Jones v. Wolf*, 443 U.S. 595, 602 (1979). When the motion to dismiss was denied, the managers sought relief from this court. We now clarify that, as an exception to the ecclesiastical abstention doctrine, courts may use neutral principles of law to adjudicate disputes involving religious organizations. The neutral-principles exception permits civil courts to adjudicate such disputes so long as the issues are determinable without resort to religious doctrines, practices, or texts. *See Puri v. Khalsa*, 844 F.3d 1152, 1165 (9th Cir. 2017). As the underlying dispute falls within the exception, we deny relief.

## FACTS AND PROCEDURAL HISTORY

Northern Nevada Sikh Society (NNSS) is a Nevada nonprofit corporation organized under NRS Chapter 82 and governed by bylaws. NNSS is the sole owner of the Sikh Temple of Reno Nevada. The Temple is used by the congregation, or *Sangat*, as a place of worship. The NNSS bylaws state that NNSS's "assets are vested in the general body (Sikh *Sangat* as a whole) of the State of Nevada and remain to be that forever."

NNSS is comprised of general members and managed by a Management Committee, which is elected by the general members at an election meeting. With the approval of a majority of the general members, the Management Committee may form other committees and subcommittees, to which it may delegate its powers, except for the power to adopt, amend, or repeal bylaws. The Management Committee is charged with issuing membership cards or certificates to general members, keeping records of membership, and permitting members to inspect NNSS's books and records.

In 2024, real parties in interest (RPIs), who are general members of NNSS and former members of the Management Committee, filed a complaint against individuals currently acting as NNSS Management, asserting three distinct breach-of-bylaw claims under NRS 82.216(1), as well as a fourth claim for declaratory relief. NNSS Management, petitioners here, consists of two groups—the Management Defendants, who purport to be on the Working Management Committee and officers of NNSS, and the Subcommittee Defendants, whom the Management Defendants allegedly appointed to an unauthorized Interim Committee and, later, a Subcommittee. According to the complaint, the Interim Committee was created to form a trust and to then transfer the

(O) 1947A

Temple into said trust. Before it could do so, the Interim Committee was dissolved due to objections by the congregation. But sometime later, the Management Committee formed a Subcommittee, once again appointing the Subcommittee Defendants to transfer the Temple into a trust.

As a result, RPIs alleged that NNSS Management breached the bylaws by (1) creating the Interim Committee and Subcommittee without approval from the general members and authorizing the two committees to dispose of NNSS's assets, (2) failing to issue membership cards to general members of NNSS and maintain membership records, and (3) refusing to allow RPIs to inspect NNSS's books and records. RPIs additionally sought declaratory relief, asking the district court to declare the actions of the Management Defendants void, that the two committees lacked the authority to dispose of NNSS's assets, and that the Management Defendants were not properly elected to the Management Committee by an election pursuant to NNSS's bylaws.

In response, NNSS Management moved to dismiss the case, arguing that the district court lacked subject matter jurisdiction to adjudicate matters of church governance and nonsecular property rights under the ecclesiastical abstention doctrine. The district court denied the motion to dismiss, concluding that the allegations in the complaint ostensibly did not ask the court "to resolve a church property dispute on the basis of religious doctrine or practice" and, thus, the ecclesiastical abstention doctrine did not apply. As explained below, we characterize the district court's reasoning as the *neutral-principles exception* to the ecclesiastical abstention doctrine.

The parties subsequently stipulated to stay the district court proceedings, and NNSS Management filed the instant petition for a writ of prohibition or, alternatively, mandamus. NNSS Management first claims that courts are precluded from adjudicating governance disputes involving religious organizations, asserting that the only exception is for real property disputes between distinct factions within a religious organization and does not apply here. In the alternative, NNSS Management argues that even if review were not precluded, the creation of the subcommittees to place the Temple in trust is an internal governing decision premised upon ecclesiastical concerns, which is not reviewable. Thus, NNSS Management contends that the ecclesiastical abstention doctrine limits the district court's exercise of subject matter jurisdiction, precluding review of the underlying controversy.

As directed, RPIs have filed an answer, and NNSS Management has filed a reply. In resolving this petition, we address the following four issues: (1) whether we should entertain the merits of this writ petition; (2) what the ecclesiastical abstention doctrine entails; (3) whether the neutral-principles exception applies to matters other than disputes regarding real property; and (4) if this case is amenable to the neutral-principles exception, whether this case can be resolved under that exception to the ecclesiastical abstention doctrine.

## DISCUSSION

*We elect to entertain this petition*

"A writ of prohibition is used to restrain a district court from acting in excess of its jurisdiction." *City of Mesquite v. Eighth Jud. Dist. Ct.,*

135 Nev. 240, 243, 445 P.3d 1244, 1248 (2019); NRS 34.320.[1]  Writ relief is an extraordinary remedy, and it is therefore "within the discretion of this court to determine if a petition will be considered." *Clay v. Eighth Jud. Dist. Ct.*, 129 Nev. 445, 450, 305 P.3d 898, 901 (2013).  This court will exercise its discretion to consider petitions for extraordinary writs "only when there is no plain, speedy and adequate remedy in the ordinary course of law or there are either urgent circumstances or important legal issues that need clarification in order to promote judicial economy and administration." *Cheung v. Eighth Jud. Dist. Ct.*, 121 Nev. 867, 869, 124 P.3d 550, 552 (2005) (citation modified).  We elect to exercise our discretionary review of the instant petition because the case is at an early stage and, if NNSS Management is correct, the district court lacks jurisdiction to proceed. Further, we elect to entertain the writ because it presents an important constitutional issue requiring clarification: whether courts may apply the neutral-principles exception to the ecclesiastical abstention doctrine in factual scenarios beyond real property disputes, so long as the issues before it are resolvable without inquiry into religious doctrine, practice, or texts.

*The ecclesiastical abstention doctrine and the neutral-principles exception*

In this case, the parties' arguments center on the ecclesiastical abstention doctrine.  Thus, we begin our inquiry with the development of the doctrine and its application in Nevada.

---

[1]NNSS Management filed a petition for a writ of prohibition or, alternatively, mandamus.  Prohibition would be the appropriate relief here if NNSS Management is correct that the district court lacked subject matter jurisdiction.  *See* NRS 34.320.  Thus, this opinion addresses only whether prohibition relief is warranted.

The Establishment Clause of the First Amendment to the United States Constitution prohibits the government from establishing or promoting religion. U.S. Const. amend. I. In furtherance of this right to the free exercise of religion, the ecclesiastical abstention doctrine prevents civil courts from resolving disputes involving religious doctrine or internal church governance. *See Jones*, 443 U.S. at 602. More specifically, the doctrine prevents courts from adjudicating religious disputes concerning "matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." *Serbian E. Orthodox Diocese for the U.S. of Am. & Can. v. Milivojevich*, 426 U.S. 696, 713 (1976). The doctrine has been recognized in Nevada. *See Tea v. Protestant Episcopal Church in Diocese of Nev.*, 96 Nev. 399, 402, 610 P.2d 182, 184 (1980) ("[C]ourts of this state should defer to the decision of responsible ecclesiastical authorities, under the internal discipline of the organization to which the local congregation has voluntarily subjected itself.").

This deferential doctrine is not absolute, however. Though this court has acknowledged that "religious associations should be afforded certain prerogatives of sovereignty," the State of Nevada has an interest in "affording the disputants some judicial recourse for resolving their arguments." *Mount Zion Baptist Church v. Second Baptist Church of Reno*, 83 Nev. 367, 369, 432 P.2d 328, 329 (1967). "Indeed, courts frequently declare that they have no power to decide religious questions, but that does not mean that courts will not assume jurisdiction over religious institutions." *Id.*

To this end, the United States Supreme Court introduced an exception to the ecclesiastical abstention doctrine—the neutral-principles approach—in the context of a real property dispute between two local

churches that sought to withdraw from the national Presbyterian Church in the United States. *See Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 441-43 (1969). There, while the court recognized that the ecclesiastical abstention doctrine "leaves the civil courts no role in determining ecclesiastical questions in the process of resolving property disputes," the Court further noted that, nonetheless, "[c]ivil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property." *Id.* at 447, 449. "And there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded." *Id.* at 449. Later, in *Jones v. Wolf*, the Court definitively established that states are "constitutionally entitled to adopt neutral principles of law as a means of adjudicating a church property dispute." 443 U.S. at 604. Such adjudication may occur so long as it involves no consideration of ecclesiastical or doctrinal matters. *Id.* at 602-03.

*The neutral-principles exception extends beyond real property disputes*

NNSS Management argues that the neutral-principles exception applies only to real property disputes of competing ownership claims between two religious factions. Accordingly, it asserts, when disputes concern a religious organization's governance, such as here, courts must abstain from deciding the dispute under the ecclesiastical abstention doctrine. RPIs contend there is no bright-line rule limiting the neutral-principles exception to church property ownership claims. Instead, RPIs argue that courts apply neutral principles of law just as they would to secular entities, such as corporations, to resolve nonreligious disputes.

The United States Supreme Court has most commonly applied the neutral-principles exception in the context of church property disputes.

*See Jones*, 443 U.S. at 597 (applying neutral principles of law in "a dispute over the ownership of church property following a schism in a local church affiliated with a hierarchical church organization"); *see also Presbyterian Church in U.S.*, 393 U.S. at 441 (analyzing the limits of civil courts to decide a property dispute between the general church and local church that involved questions of faith and practice). But the Court has not established a bright-line rule limiting the application of the neutral-principles exception to only those cases involving church disputes over real property. We therefore look to this court's use of the exception to resolve this issue.

Our lack of caselaw on the ecclesiastical abstention doctrine and the neutral-principles exception reflects the infrequency with which disputes involving religious entities reach this court. In *Mount Zion Baptist Church*, however, we refused to apply the ecclesiastical abstention doctrine, instead resolving a property issue dealing with a religious organization's corporate governance. 83 Nev. at 370, 432 P.2d at 329-30 (holding the church's notice of a meeting to determine whether to merge with another church was "not given in accordance with the [church's] by-laws"). We nevertheless characterized the action as "a property dispute between two discordant factions" within the church. *Id.* at 368, 432 P.2d at 328. Therefore, our decision in *Mount Zion Baptist Church* does not clearly resolve the extent to which Nevada courts may use neutral principles of law to settle disputes involving religious entities.

And while we also applied neutral principles of law to resolve a church property dispute in *Tea v. Protestant Episcopal Church in Diocese of Nevada*, that case similarly fails to illuminate the extent of the neutral-principles exception's application. 96 Nev. at 402, 610 P.2d at 184 (confronting whether the general church or the local congregation retained

control of church property). Because our caselaw does not present a clear answer as to whether courts may utilize the neutral-principles exception in cases beyond those concerning church property ownership disputes, we look elsewhere.

States are split as to whether the neutral-principles exception may apply beyond the context of church property disputes. *Contrast Bruss v. Przybylo*, 895 N.E.2d 1102, 1125 (Ill. App. Ct. 2008) ("Because there are no clear signs . . . that a neutral principles analysis is applicable beyond property cases, we believe it best to err on the side of expanding rather than restricting first amendment protection."), *with Kant v. Lexington Theological Seminary*, 426 S.W.3d 587, 596 (Ky. 2014) ("Of course, neutral principles of law can be applied to the breach of contract claim presented in the instant case . . . ."). In support of limiting application of the neutral-principles exception, NNSS Management relies on Texas caselaw to rebut the notion that courts can preclude the application of the ecclesiastical abstention doctrine beyond church property ownership disputes. But these cases, which are merely persuasive, do not establish the bright-line rule NNSS Management asserts. In fact, the cases cited clearly note that their decisions are based on the ecclesiastical nature of the issues presented—without establishing a bright-line rule regarding the scope of the neutral-principles exception. *See Retta v. Mekonen*, 338 S.W.3d 72, 77 (Tex. Ct. App. 2011) (applying the ecclesiastical abstention doctrine because "[t]he question of who may be admitted and who may be excluded or removed from a house of worship is a religious question"); *see also In Re Lubbock*, 624 S.W.3d 506, 509 (Tex. 2021) (applying the ecclesiastical abstention doctrine to a deacon's defamation claim because resolving the claim would "require the trial court to evaluate whether the Diocese properly applied Canon Law

and [is] inextricably intertwined with the Diocese's internal directive to investigate its clergy"). Because the underlying issue in this case does not necessarily involve ecclesiastical controversies, the cases cited by NNSS Management do not support its argument that the neutral-principles exception applies only in church real property disputes. And in any event, we are more persuaded by the United States Court of Appeals for the Ninth Circuit's approach to applying the exception.

As the Ninth Circuit noted, "[p]roperty disputes have proved especially amenable to application of the neutral-principles approach." *Puri*, 844 F.3d at 1165.[2] Nevertheless, the Ninth Circuit explained, it "[is] unaware of any authority or reason precluding courts from deciding other types of church disputes by application of purely secular legal rules, so long as the dispute . . . can be decided 'without resolving underlying controversies over religious doctrine.'" *Id.* (quoting *Presbyterian Church in U.S.*, 393 U.S. at 449). Namely, the Ninth Circuit has applied the neutral-principles exception beyond church property ownership disputes on at least three occasions. *See Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d 1244, 1246, 1250 (9th Cir. 1999) (applying neutral principles of trademark law in a dispute between a church and two former members who sold the church's trademarks as their own); *see also Puri*, 844 F.3d at 1165-68 (applying the neutral-principles approach to a corporate

---

[2]We note that while *Puri*'s holding has been abrogated in part, its analysis and conclusion as to the ecclesiastical abstention doctrine and the neutral-principles exception remain unaffected. *See Puri*, 844 F.3d at 1158 (relying on the holding in *Bollard v. Cal. Province of the Soc'y of Jesus*, 196 F.3d 940 (9th Cir. 1999), *overruled by Markel v. Union of Orthodox Jewish Congregations of Am.*, 124 F.4th 796 (9th Cir. 2024), *cert. denied*, ___ U.S. ___, 145 S. Ct. 2822 (2025)).

governance dispute between a Sikh church and members alleging violations of the church's articles of incorporation, the church's bylaws, and Oregon law); *Huntsman v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 127 F.4th 784, 792 (9th Cir. 2025) (en banc) (holding the court could address a fraud claim against a church because it did not run afoul of the ecclesiastical abstention doctrine, as the court did not have to consider "matters of [c]hurch doctrine or policy").

In sum, and absent Supreme Court authority holding otherwise, we now clarify that the neutral-principles exception to the ecclesiastical abstention doctrine may apply beyond real property disputes among church members. Rather, the relevant inquiry for courts to resolve is whether the court is able to apply neutral principles of law to resolve the issues at hand without consideration of ecclesiastical or doctrinal matters. *See Jones*, 443 U.S. at 602-03. In other words, when neutral principles of law can resolve the underlying dispute, then the ecclesiastical abstention doctrine does not apply. *See Puri*, 844 F.3d at 1165. Accordingly, the neutral-principles exception applies beyond the context of church property ownership disputes, so long as the court applying neutral principles can do so "without resolving underlying controversies over religious doctrine." *See Presbyterian Church in U.S.*, 393 U.S. at 449.

*The allegations in RPIs' complaint, if taken as true, do not require the court to resolve, or consider, ecclesiastical controversies, doctrines, practices, or texts*

Since we have determined that the neutral-principles exception applies in cases beyond the context of church property ownership, we must now determine whether the issues raised in RPIs' complaint are secular or ecclesiastical in nature. NNSS Management claims the decision to place the Temple in trust is a decision of internal governance premised on

Supreme Court
of
Nevada

(O) 1947A

ecclesiastical concerns, because such action is done for the benefit of the membership and to support NNSS's religious practices. NNSS Management also asserts that the property interest here is nonsecular and relates to the heart of NNSS's religious practices. RPIs contend that the issues raised in the complaint do not require the district court to consider any Sikh doctrines, practices, or texts, framing the matter as a typical nonprofit corporate dispute. As a result, under Nevada law, NRS 82.216(1) vests RPIs with an avenue for legal recourse arising from the purported breach of bylaws by NNSS Management.

After reviewing the allegations in RPIs' complaint and NNSS Management's claims, we conclude that the ecclesiastical abstention doctrine does not apply, as the issues raised in the complaint do not require the district court to resolve ecclesiastical questions or consider Sikh doctrine, practice, or texts. RPIs alleged three breach-of-bylaws claims and a single claim for declaratory relief. RPIs assert these claims under NRS 82.216(1), maintaining that they arise from NNSS Management's purported failure to follow NNSS's bylaws in forming the two committees, attempting to place the Temple in trust, in not maintaining adequate membership records, and in restricting members from inspecting NNSS's books and records. Contrary to NNSS Management's assertions, RPIs' claims do not require the district court to resolve whether the temple *should* be placed in a trust or any controversy over religious doctrine. Nor do they ask the district court to decide whether NNSS Management properly applied ecclesiastical rules when it engaged in the actions alleged by RPIs. Rather, RPIs ask the court to decide—under Nevada law and the secular governing corporate documents of NNSS—whether NNSS Management acted in accordance with NNSS's bylaws.

 

The parties also do not contest whether the Management Defendants meet the religious eligibility requirements for the disputed Management Committee positions or to be considered general members of NNSS. Instead, the dispute appears to concern NNSS Management's actions, not its beliefs, and turns entirely on whether NNSS Management exceeded its authority as established in the NNSS bylaws. *See* NRS 82.216(1) ("The statement in the articles or bylaws of the objects, purposes, powers and authorized business of the corporation constitutes, as between the corporation and its directors, officers or members, an authorization to the directors and a limitation upon the actual authority of the representatives of the corporation."). In other words, nothing in the relevant sections of NNSS's bylaws or the claims alleged would—as it appears at this point in the proceedings—require the district court to evaluate Sikh doctrine, practices, or texts. *See Maktab*, 179 F.3d at 1249. Accordingly, the neutral-principles exception applies here, and NNSS Management failed to satisfy its burden of demonstrating writ relief is warranted.

## CONCLUSION

The neutral-principles exception to the ecclesiastical abstention doctrine has generally been applied only to real property disputes between competing church factions. Here, we hold that the application of the neutral-principles exception is appropriate so long as a dispute is determinable by applying neutral principles of law and does not require the court to resolve any underlying controversies involving religious doctrine, practice, or text. Having considered the allegations raised in the instant petition and the accompanying record, we conclude that the district court correctly determined that this case is subject to the neutral-principles

exception to the ecclesiastical abstention doctrine. At this juncture, the claims presented in RPIs' underlying complaint appear to be secular in nature and may be determined by the district court's application of Nevada law without any consideration of Sikh doctrine, practices, or text. Accordingly, we hold that the district court was not required to abstain from the adjudication of this matter, and the court properly denied NNSS Management's motion to dismiss. We therefore deny the petition.

_____, J.
Parraguirre

We concur:

_____, J.
Pickering

_____, J.
Bell

SUPREME COURT
OF
NEVADA

(O) 1947A